## Hannah v. Commonwealth.

(Decided December 1, 1931.)

(As Modified on Denial of Rehearing March 1, 1932.)

WAUGH & HOWERTON and A. O. CARTER for appellant.

J. W. CAMMACK, Attorney General, and GEO. H. MITCHELL, Assistant Attorney General, for appellee.

OPINION OF THE COURT BY CREAL, COMMISSIONER— Affirming.

Tad Hannah, Roscoe Derefield, Harlan Derefield, Ed Clarke, and Kenneth Meade were jointly indicted in the Lawrence circuit court for the crime of assault with offensive weapons with intent to commit robbery. On separate trial, Hannah was found guilty and his punishment fixed at thirteen years' imprisonment. Motion and grounds for a new trial having been overruled, he is here on appeal.

As grounds for a reversal of the lower court's judgment, appellant relies on three alleged errors, viz.: (1) Error in overruling motion for change of venue; (2) error in refusing a continuance; (3) error in instructions given to the jury.

While no question is raised as to the competency of evidence, a brief summary thereof is necessary to an intelligent discussion of the questions involved.

Two days before the robbery, appellant and Meade left their home in Ashland and went to Ohio. There they, together with their three codefendants, embarked on an automobile trip, ostensibly to seek work. After two days of wandering in Ohio, West Virginia, and Kentucky, they landed on Blaine creek in a remote section of Lawrence county, where they claimed to have gone to seek employment on a pipe line that was being laid in that vicinity. Their efforts, if any were made, were of no avail. On their return from the Blaine section to Louisa, they passed the store and filling station of R. J. Gussler, and had continued on for about a mile when it occurred to them that their supply of gasoline should be replenished. Roscoe Derefield and Ed Clarke were requested to get out and wait on the roadside while the other three returned for the gasoline. When they arrived at the station, Mr. Gussler appeared to wait on them and they asked him to fill the tank. Evidently there was a goodly supply already in the tank, as he testified that he only put five gallons in it. He was then asked if he had anything to eat and he informed them that he had some canned goods. Harlan, Derefield and Hannah followed him into the store. The evidence about which there is no conflict shows that as Mr. Gussler went around the counter to the canned goods section, he was commanded to "stick up your hands." His tardiness in complying with the command caused it to be repeated with considerable emphasis. Hannah went through his pockets and through the cash drawer, which he forced Gussler to open. Gussler was then driven into an adjoining room and forced to unlock and open a dresser drawer from which Derefield took the contents of a pocketbook. A pistol belonging to Gussler's son was taken from where it was hanging on the wall and Gussler's shotgun broken into pieces. The telephone was torn from the wall, Gussler was compelled to crawl under the bed, and several shots were fired into the floor.

As to circumstances about which there is a conflict of evidence Gussler testified that, when he was commanded to throw up his hands, he looked around and both men had pistols pointed at him and that a shot was fired toward him; that Derefield punched him several

times with a pistol when he commanded him to hurry; and that Derefield took his son's pistol from the wall. Derefield testified that he pointed his pistol toward Mr. Gussler, and that he took the pistol from the wall, broke the shotgun, fired shots into the floor, and forced Gussler to get under the bed. Hannah admitted that he went through Gussler's pockets and took the money from the cash drawer in the store, but denied that he had a pistol when he went in or that he drew one on Mr. Gussler. He testified that he took the pistol from the wall and did what he did at the command of Derefield because he was frightened. He admitted, however, that he was 35 years of age, while Derefield was a boy about 19 years old. Gussler stated that he did not remember whether Hannah fired any of the shots in the store, but stated that he fired outside, when leaving.

Officers who were notified, met and attempted to stop the automobile in which appellant and his codefendants were riding, but the command to halt was unheeded. Some of the officers testified that as the car sped by a shot was fired from the right of the front seat. The officers returned the fire. One of their shots wounded Hannah in the right hand and others struck the automobile. After a short distance a tire went down and the occupants abandoned the car and ran. Hannah and one of his companions were apprehended in a short distance and the others were later arrested. The pistol taken from Gussler's home was found on Hannah. It was in the same condition as when taken, except that one side of the handle was missing, and there was an empty shell in one chamber. We assume that this evidence was introduced as tending to show that Hannah fired this pistol at the officers and that the bullet which inflicted the wound in his right hand tore the side off the handle of the pistol.

In the petition for a change of venue it is avowed that the prosecuting witness is a man of wide acquaintance and influence in Lawrence county; that newspapers in Louisa as well as the Ashland Independent, all newspapers of wide circulation in the county, carried accounts of the robbery and the subsequent running fight with the officers which were unfavorable to appellant; that when Harlan Derefield entered a plea of guilty and was placed on trial, the commonwealth attorney made a statement to the jury in the presence of other jurors and a large audience in the courtroom, giving a lurid and exagger-

ated description of the circumstances of the case; that by reason of these things an unfavorable atmosphere and a prejudice was created against appellant that would preclude him having a fair trial in that county.

Affidavits, identical in form and substance, of fifteen citizens, were filed with the petition to the effect that affiants were not of kin to appellant or to his counsel and were acquainted with the state of public feeling in the county and believed the statement of the petition to be true; that appellant could not, at the time, have a fair and impartial trial before a jury in Lawrence county.

In opposition to the motion for change of venue, the commonwealth filed affidavits of ten citizens which likewise were identical in form and substance, and to the effect that the affiants were not of kin to appellant or to counsel for either side and had no interest in the case and were acquainted with the feeling and public opinion in the county and believed that each and all of the appellants could have a fair and impartial trial therein, and further that it would be no trouble to obtain a jury composed of qualified, fair, and impartial citizens of the county who, could and would give to appellants such a trial.

A prevailing rule of this court is that the discretion of a trial court in refusing a change of venue will not be interfered with unless it is made to appear that this discretion has been abused. Bryant v. Commonwealth, 202 Ky. 427, 259 S. W. 1038; Schleeter v. Commonwealth, 218 Ky. 72, 290 S. W. 1075. This rule is recognized and referred to in appellant's brief. In the case of Hill v. Commonwealth, 232 Ky. 453, 23 S. W. (2d) 930, 936, it is said:

> "Unless there has been an abuse of discretion by the trial court which is apparent from a consideration of the evidence, this court will not reverse, although the court may be of the opinion that the trial court improperly held that the defendant had not sustained his application for a change of venue by the burden of proof."

In the first place, it does not appear that the lower court abused its discretion in holding that appellant had not sustained his application for change of venue; and, in the second place, the evidence does not tend to indicate

that any undue prejudice existed against appellant in Lawrence county. He, a man of mature years, admitted that he had part in the robbery, yet his codefendant Harlan Derefield, who was a mere boy, was given a twenty-year sentence, or seven years longer than that given appellant. The difference in the verdicts clearly indicates that the jury gave to appellant the benefit of the doubt arising out of a conflict in evidence and that they were not actuated or moved by passion or prejudice in rendering their verdict.

The affidavits supporting the motion for a continuance reiterate some of the averments contained in the petition for change of venue and state that appellant had only been able to employ counsel two days before his case was called for trial; that he had had no opportunity to confer with counsel or to prepare for trial and was unable financially to employ a stenographer to take evidence or to secure the attendance of witnesses.

From the reading of the evidence, and a careful consideration of the whole record, it does not appear that any rights guaranteed appellant by the law were prejudiced by the action of the court in refusing to grant a continuance. He was not thereby deprived of the evidence of any witnesses who were present or who had any actual knowledge of what occurred at the scene of the robbery. He introduced a number of witnesses as to his good character and reputation prior to the time of the robbery. He was represented in the lower court, as he is here, by able counsel who did all they possibly could for appellant under the circumstances in the case. Refusing to grant a continuance is also a matter that addresses itself to the sound discretion of the trial court. McQueen v. Commonwealth, 224 Ky. 89, 5 S. W. (2d) 487; Mullins v. Commonwealth, 227 Ky. 514, 13 S. W. (2d) 535. It is not made to appear that the trial court abused its discretion in this instance.

The third contention made by appellant's counsel presents a question demanding more serious consideration. It is asserted by counsel that section 1160, Kentucky Statutes, describes two distinct offenses and that the indictment only charges the first offense, but that in the instructions the court has embodied both of the offenses. In support of this assertion, counsel cites the case of Chappell v. Commonwealth, 200 Ky. 429, 255

S. W. 90; Taylor v. Commonwealth, 3 Bush 508. The section of the statute in question is as follows:

> "If any person, with an offensive weapon or instrument, shall unlawfully and maliciously assault, or in or by any forcible and violent manner, demand any money, goods or chattels, bond, bill, deed or will, or other evidences of right, or other thing of value of or from any other person, with an intent to rob or commit a robbery upon such person, he shall be confined in the penitentiary not less than five nor more than twenty years."

A careful reading of this section discloses that it does not describe or contain two distinct offenses, but describes one specific offense which, however, may be committed in two different ways. This being true, it follows that an indictment charging that it was committed in either or both of the ways would be good. In the Chappell case, this court did, in effect, hold that the section of the statute under consideration contained two distinct offenses, basing such finding on the case of Taylor v. Commonwealth, supra, which was cited with approval in the later case of Commonwealth v. Tanner, 5 Bush 316. In the latter case it is said:

> "The offense is complete, either by making an assault with an offensive weapon or instrument, with the felonious intent to rob the person assaulted; or by demanding money, or other personal property, with such felonious intent to rob by menace, or in or by a forcible and violent manner. . . ."

In the Taylor case we find it was said:

> "According to our construction of the statute, it contains two distinct provisions, one of which embraces this case, and they may be separately stated as follows:
>
> "1st. If any person, with an offensive weapon or instrument, shall, unlawfully and maliciously, assault any other person, with a felonious intent to rob or commit robbery upon such person; or,
>
> "2d. If any person shall, by menace, or in or by any forcible or violent manner, demand any money, goods or chattels, bond, bill, deed, or will, or

other evidences of right, or anything of value, of or from any other person, he shall be confined, &c.

"Under the first of these provisions, crime consists in the commission of an assault with an offensive weapon or instrument, with a felonious intent to rob the person assaulted; whilst, under the second the gravamen of the offense is the act of demanding money or property with a felonious intent to rob by menace, or in or by any forcible or violent manner."

A careful study of these cases discloses that they are not susceptible of the interpretation given them in the Chappell case and this court fell into error in construing section 1160, supra, as containing two distinct offenses and in interpreting the Tanner and Taylor cases as so holding.

Notwithstanding our holding that the statute does not contain two distinct offenses, but only one offense which may be committed in different ways as therein described, the instruction in question is technically incorrect. It should have followed the language of the indictment describing the manner in which appellant was charged to have violated the statute, but instead it embodied, in substance, all the language of the statute describing the ways in which the offense may be committed. However, appellant's own admissions and other evidence as to his guilt of the offense as charged leaves no escape from the conclusion that the result would have been the same if the instruction had been in strict conformity with the language of the indictment. Therefore, in the light of the facts and circumstances as shown by the record, we are constrained to hold that this technical error in the instruction is not sufficient to authorize a reversal.

Some objection is made to instruction No. 4, defining "assault" as used in the indictment and instructions; but this does not seem to be seriously urged. The instruction given is as favorable if not more so to appellant than the one quoted by his attorneys from Hobson on Instructions, which might have been properly given in this case.

So much of the opinion in the case of Chappell v. Commonwealth, supra, as may be in conflict with this opinion is hereby overruled.

Finding no error in the record prejudicial to appellant's substantial rights, the judgment of the lower court is affirmed.

Whole court sitting.