## Sebree v. Commonwealth.

(Decided Oct. 1, 1935.)

FRANK C. GREENE for appellant.

BAILEY P. WOOTTON, Attorney General, and RAY L. MUR-PHY, Assistant Attorney General, for appellee.

OPINION OF THE COURT BY STANLEY, COMMISSIONER—Affirming.

The indictment charges Charles Sebree and Edward Johnson with the crime of confederating and

banding together for the felonious purpose of intimidating, alarming, disturbing, and injuring Walton Banks, sheriff of Carroll county; and, further, that Sebree had been twice previously convicted of a felony. Section 1130 of the Statutes, known as our Habitual Criminal Act, provides that, if the jury finds an accused person guilty of the principal charge of the indictment and also of having been twice previously convicted of a felony, he shall be confined in the penitentiary during his life. The separate trial of Sebree resulted in the infliction of that punishment. Numerous grounds are submitted for a reversal of the judgment.

There is no contradiction in the evidence, since the defendant introduced none. Nevertheless, he contends that the verdict is flagrantly against the evidence. His argument is that the facts disclosed by the commonwealth's proof merely showed a friendly purpose to talk with Banks and did not justify the conclusion that there was a conspiracy or an intent to harm him. We state the evidence in detail.

Early in the morning of November 10, 1934, Banks, the sheriff, and other officers, went to Sebree's home to arrest one Willie Mason, alias Ed Kirby, an ex-convict, who was wanted in Indiana on the charge of the murder of a policeman. There was a brief passive resistance, but, after Sebree had been advised to remove his family from the building, as the officers intended to take Mason, he surrendered. During the negotiations, Sebree told the sheriff that he and his gang had let Carroll county alone and that Carroll county ought to let them alone. He stated that, if they desired, they could easily have "taken" either of the two banks in Carrollton.

Oakey Thompson operated a filling station, lunchroom, and liquor establishment on one of the highways near Carrollton. He was a cousin of the sheriff, and had known Sebree for two years. About half past 9 o'clock that night Sebree and Johnson appeared at a side window and looked in and called to Thompson. Mrs. Frances Patton, a clerk, and Carroll Supplee, were inside with him. The two men came in, and Sebree asked Thompson to telephone Banks and tell him to come out there, that a fellow wanted to see him, but not to tell him who it was. He said that he wanted to find out from Banks why they had arrested Mason and to learn "the son-of-a-bitch who snitched on him." Sebree

was drinking. He said during the evening that "they ought not to have come up there and got Mason," and also they had "laid off Carroll County, and, by God, Carroll County had to lay off him." However, he observed there was one place they had marked and were going to get. Sebree also stated that, when the officers had arrested Mason, "there were five machine guns looking at them out of the window," and they "could have gotten every one of them if they had wanted to." Two calls were made by Thompson without being able to get into communication with Banks. During this period of waiting, Sebree told Johnson to get the machine guns and sawed-off shotguns from the car and put them in the back room. The men had displayed three pistols they had on their persons. Johnson brought in a sawed-off shotgun which they demonstrated to Thompson and Supplee. Sebree put the gun under his coat. Two customers drove up and Thompson went out to wait on them. Sebree went out the back door and stood by his automobile while Johnson remained inside with a drawn revolver. Both were much concerned, and demanded assurance that it was not the sheriff outside. Thompson had suggested that perhaps Banks might be coming out there, but Sebree insisted that he take them into Carrollton, as he wanted to talk with Banks. After some effort to avoid doing so, Sebree became more insistent and finally constrained, if not compelled, him to do so. He, Mrs. Patton, and Sebree went in Thompson's car, while Johnson remained at the filling station, which Thompson locked up when he left. Sebree directed Johnson to turn their car around and head it toward the road. There was a private conversation between the two men before they started. Johnson warned Thompson not to do any "double crossing," and nothing had better happen to him, saying, "Mason is behind the bars but there are plenty of our gang left that will see you if you do." He had previously boasted of their "gang" and said they would put Thompson "on the spot." In Carrollton Sebree gave the directions as to where they should go looking for the sheriff. He could not be located, and the party returned to Thompson's place on his suggestion that maybe Banks had gone out there.

According to the time fixed, it was just before these men arrived at Thompson's that two men stopped William Gentry on the highway near-by. He identified the

car as being the one in which Sebree and Johnson were riding, and testified that Johnson had got out into the road and drawn a pistol on him. He had reported this to the sheriff as soon as he could. In response to this report, the sheriff and a posse had gone into the vicinity. They saw the car at Thompson's place with Johnson crouched behind it. The officers arrested him after a display·of arms, and took two loaded automatic pistols from his person. In a few minutes Sebree and Thompson drove up, and the sheriff approached the car with a drawn revolver, whereupon Sebree reached for a pistol in his belt, but Thompson grabbed his arm and told him not to start any shooting. Both men were taken to jail.

While the defendant displayed no personal animosity toward Banks, and he insists the evidence shows only that he wanted to secure some information from him as to who had caused the arrest of his companion, Mason, nevertheless it is manifest at least that he was angry because of the interference and arrest and by what he conceived to be poor sportsmanship, since his gang had graciously refrained from robbing the banks or committing other crimes in Carroll county. There was plenty of motive for doing the officer harm. The attitude and action of these heavily armed, boastful desperadoes fully justified the conclusion that Sebree's' invitation to the sheriff to come out into the country to meet and talk with him was but a subterfuge on the part of both men to get him into a place of advantage to do him harm. The felonious purpose of the accused is the gravamen of the crime charged. The character of an intent is a question of fact to be determined by the jury. Being a state of mind, intent and purpose can seldom be proved by direct evidence. Extrajudicial statements, or even testimony, that a party was acting in good faith, are not conclusive. The circumstances and behavior are often such as to destroy such claims and to permit the deduction of an evil intent. We think the evidence abundantly warranted such conclusion in the instant case.

The defendant moved to quash the indictment because the original records of his former convictions had not been produced before or considered by the grand jury. The only reference in the record to this is the order of court reciting that as the basis of the motion

and overruling it. Waiving the absence of proof of the verbal allegation, we may say that in this jurisdiction, when an indictment is presented to the court in the manner and form prescribed by the statute, it must be taken and considered as having been found and returned in due form of law, and the court has no authority to inquire into the evidence heard by the grand jury to ascertain whether it was such as is required by section 111, Criminal Code of Practice, to authorize the finding on an indictment. McIntire v. Commonwealth, 4 S. W. 1, 26 Ky. Law Rep. 469.

The case was called for trial on December 3d. The court overruled the defendant's motion for a continuance, which was based upon the affidavits of his counsel and himself stating in substance that the defendant had been confined in the Jefferson county jail since his indictment on November 27th, and by reason thereof he had not been able to confer with witnesses or to employ counsel and consult him until an hour before the case was called. His attorney had conferred with him while in jail and had appeared at his arraignment on the day the indictment was returned. Mr. Greene, his counsel, lived in Louisville. He deposed that the defendant had been negotiating with him and that he had appeared at his arraignment as a matter of accommodation. It appears in the record that at that time counsel agreed to the setting of the case for trial on the day it was called. We do not think the facts authorized the continuance. Failure to agree upon a fee to be paid an attorney until the morning a man's case is set for trial is not sufficient justification for a continuance. It had been three weeks since the arrest and a week since his indictment. While the court declares that the constitutional right of an accused person to be represented by counsel comprehends time for preparation, it appears here that there was sufficient time and opportunity, as well as an actual participation by counsel in the proceedings. There is no intimation of any evidence which might be or could have been secured by delay. All persons having any knowledge of the circumstances were introduced. The court acted within a reasonable discretion in denying the continuance. Graham v. Commonwealth, 200 Ky. 161, 252 S. W. 1012; Hannah v. Commonwealth, 242 Ky. 220, 46 S. W. (2d) 121; Holmes v. Commonwealth, 241 Ky. 573, 44 S. W. (2d) 592, 593.

It is not contended that the court committed error in overruling the defendant's motion for a change of venue upon the grounds of prevailing prejudice in the county and the prominence and influence of the sheriff when a hearing was held. But it is vigorously argued that it was error to deny the change upon the defendant's renewal of his motion when it had become necessary to summon bystanders for jury service after 98 veniremen, whose names had been drawn from the wheel, had been examined and only 7 jurors qualified and were accepted. On the original motion there was overwhelming evidence that the accused could secure a fair trial in Carroll county. While there may be an occasion when subsequent developments, as in the selection of a jury, disclose the propriety of changing the venue of a trial, we do not regard mere difficulty in securing a qualified jury acceptable to both parties as in itself a sufficient showing of an abuse of discretion vested in the trial judge in the matter.

After the exhaustion of the regular panel and of two venires of 60 men, whose names had been obtained from the jury wheel without the jury having been completed, the court directed the summoning of 40 bystanders by Paul Williams and two others. These men were appointed, as stated in the order, because the sheriff and three of his deputies were prosecuting witnesses in the case. While the defendant objected to the summoning of these men because their names had not been drawn from the wheel, the record does not show any objection to Williams serving as special bailiff until the defendant challenged the panel after the jury had been completed. Among other grounds (which have been abandoned), he charged that Williams then was, and for a number of years had been, his enemy; had strong feelings against him; had publicly condemned him; and was doing all within his power to bring about his conviction. We have no doubt that, had the defendant spoken up through his counsel when Williams was appointed, the court would have regarded his objection and named another. At least, he would now be in position to avail himself of that denial. We think the appellant waived any objection he may have had by not timely presenting it.

It is argued that the court committed error in admitting evidence as to the arrest of Mason in the de-

fendant's home that morning and as to Gentry having been stopped or held up on the highway. No objection was made to the admission of the testimony concerning the events at the defendant's home, but later a motion was made to exclude the testimony. The court overruled the motion and instructed the jury that the evidence had been admitted for the purpose of indicating or showing a conspiracy, to identify the persons, and as a motive in the case, if it did so, and was not to be considered for any other purpose. The same practice was observed with respect to Gentry's testimony. The court admonished the jury that the evidence had been admitted only to show the purpose of the defendant and his identity and the co-operation between Sebree and Johnson, and for no other reason. We regard the rulings of the court in relation to both items of evidence as being correct.

Finally, it is argued that the defendant's motion to arrest judgment and discharge him should have been sustained. That is based upon the form of the verdict, which was, "We, the jurors in this case, find the defendant guilty and fix his punishment in the State penitentiary for the period of his natural life." It is submitted that the verdict does not disclose that the jury found as a fact that the accused had been previously convicted of felonies. The indictment charged, and competent evidence proved, that the defendant was guilty of the principal crime of confederating and banding together to intimidate or injure Walton Banks, and also that he had been previously convicted upon two former occasions. The instructions were in accordance therewith. In Denham v. Commonwealth, 119 Ky. 508, 84 S. W. 538, 27 Ky. Law Rep. 171, the verdict simply reported the finding of the defendant guilty and fixed his punishment in inept and misspelled words. The court held it sufficient. In Williams v. Commonwealth, 140 Ky. 34, 130 S. W. 807, the verdict merely recited that the jury agreed "and fine the defendant one hundred and fifty dollars and six months in jail and work." Judgment was duly entered thereon. The court observed that it would be highly technical to hold that the failure of the jury to say in its verdict that the defendant was guilty rendered the judgment of conviction invalid and held it sufficient. While it would perhaps have been better as a matter of judicial pride in main-

taining a more accurate record for the trial judge to have corrected the verdict to show the jury found the defendant to be guilty as charged in the indictment, nevertheless, since that was certainly its intention and meaning, the verdict was sufficient.

The defendant has been accorded a fair and impartial trial, and, though a heavy penalty has been prescribed for him, he has established himself as a menace to society. He is the author of his own fate.

Judgment affirmed.