# Canter v. Commonwealth.

(Decided June 17, 1938.)

**(As Corrected on Denial of Rehearing Oct. 7, 1938.)**

JESSE MORGAN, VERNON FAULKNER, COURTNEY C. WELLS and B. W. BAKER for appellant.

HUBERT MEREDITH, Attorney General, and WILLIAM F. NEILL, Assistant Attorney General, for appellee.

OPINION OF THE COURT BY MORRIS, COMMISSIONER— Affirming.

Appellant was indicted for the murder of Walden Napier, alleged to have been committed on November 23, 1937. Upon trial he was found guilty and his punishment fixed at life imprisonment. He appeals.

There is little contrariety of facts which led up to the homicide. Appellant admits that he fired the shots which caused the death of Napier, but contends that same were fired in the protection of his life, or to prevent serious injury to himself at the hands of deceased, and another whom he claims was acting in concert with deceased.

As we read the record both appellant and deceased were about twenty-four years of age. Evidently they had been friends; they had attended school together. About six o'clock on the evening of the day of the homicide the two met in a pool room in Hazard. They left there together and went to "Nick's Place," where whiskey was sold and gambling was carried on in a rear room. The two engaged in a game called "five-up" playing for rather high stakes, though when the play was finished appellant was only four or five dollars

winner. During some part of the play they got into a heated argument as to the correctness of the count. Some blows were passed, though it appears that this misunderstanding was temporarily overlooked, as the game was resumed and continued until around nine o'clock.

About this time appellant left by the front door and deceased departed from the rear. Two persons left with appellant, and a friend of deceased, unknown to appellant, left with deceased. Appellant secured a taxi, and after going to one or more places turned up at the "Rendevous," a roadhouse, where the homicide later occurred.

Appellant thinks he arrived at the roadhouse some time about ten o'clock. He went through the front room, thence through the dance hall, to what is called a "private" dining room, and joined some girls and boys who were there. He left for a short time, as he says, to get a coca-cola; returning he found that Napier had come in and joined the party. He had two companions with him. Shortly thereafter appellant says Napier walked up to him and said, "I'll whip you." Some words were passed; other members of the party joining in, seemingly endeavoring to prevent trouble.

Appellant says that he went to a table in another corner of the room, and deceased came over to his table. Appellant started to leave the room when deceased "reached for him and spoke to him." Appellant said, "Don't do that," and Napier reached for a bottle standing on the table. Appellant then struck him about the head with his pistol, and Napier "turned loose of the bottle." He held his pistol on Napier and said to him, "I don't want to hurt you." He said that at the time he feared Napier and Edwards were going to "jump" on him, though Edwards seems to have been doing nothing more than talking.

Appellant left, going through another part of the building to the front, and asked a boy to call him a taxi. He left Napier in the private dining room. He says it was his intention to go home, but went back to deliver a message to Chilton. In the meantime Napier had come into the dance hall and joined some persons who were seated or standing around the fireplace, among them, Oscar Farmer, the proprietor. There were also one or two of Napier's friends who had been with him in the rear dining room.

Appellant, looking for Chilton, was on the opposite side of the room and as he says, leaning against or close to the wall. He insists that he did not at first see Napier, but located Chilton on the other side of the room; motioned to him, and started towards him. As he started across to meet Chilton he had to walk near the persons around the fire, possibly within four or five feet of them. As he got within this distance he says Oscar Farmer "raised up and got from behind a chair and spoke to me; hollered at me. I turned and looked at him and said, 'what do you want?' He started across the floor at me; must have taken three or four steps, when Napier jumped toward me. Edwards raised up out of his chair and started towards me, when Napier ran across the floor at me. Oscar Farmer was right by the side of him. Edwards was a little behind them, and Napier grabbed me; he grabbed me and Oscar Farmer grabbed me on the right side, and I reached for my pistol. Napier hit me on the side of the head and I fired one shot. Oscar Farmer grabbed hold of the pistol and I fired two more. I fired those shots because I thought they would kill me if I didn't fire them." There is no claim, nor is there proof from any one, that Napier, or his friends, were armed. Napier was shot twice and died shortly thereafter.

Oscar Farmer says that Napier came to the roadhouse first; appellant some time later. He did not know of the occurrence in the dining room. He was near the fire place in the second room when Napier walked in from the rear room and said to him: "I got a dirty deal back there a minute ago; Cap (referring to appellant) hit me in the face with a pistol. I said 'where is he?' and he said 'he is right over there.' " About this time appellant "walked over towards us and had his hands on his hips, this way. I said: 'What did you do a thing like that for?' and when I said that, he walked towards us. Darb (meaning Napier) was between him and me; * * * and he got right over where Darb was, and they clinched one another and wrestled around about 25 feet before he shot him. He fell, and I was over there and tried to get hold of the pistol. He threw it on me and said, 'I'll kill you.' He broke and run out the door. My mother was coming in; she had heard the shots. He said 'get out of my way, I'll kill anybody that gets in my way.' He went on out the door and then got in a taxi."

Edwards detailed what occurred in the private dining room, and his testimony does not conflict to any material extent, with that of appellant. He did say that when appellant was holding the pistol on Napier in the rear room, appellant said: "Now damn you, if you don't think I'll shoot you, just move." As to what occurred near the fireplace, he agrees in the main with Farmer's testimony, as do four or five other witnesses who were present.

Several witnesses, who were present at the time of the shooting, bear out the testimony of appellant to some extent. Chilton does not say anything about Farmer or Edwards, or either of them, making any threatening move towards appellant.

Appellant is here urging some four or five grounds out of the seventeen set up in motion for new trial, for a reversal, and we shall take them up ad seriatim.

Appellant in proper time moved the court to quash the indictment, on the ground that the grand jury did not have evidence before it upon which to base a return. In other words, it was not found in conformity with section 158 when construed in connection with section 107 of the Criminal Code of Practice. The former section provides the grounds upon which an indictment may be set aside, sub-section 3 being "that the indictment was not found and presented as required by this Code." Section 107 provides: "The grand jury can receive none by legal evidence * * *."

The complaint here is not based on that ground, but is based on the ground that on some of the charges laid there was no evidence. The matter arose in this way: The first count contained a correct and unassailed charge of the murder of Napier by appellant. This was followed by three separate counts in which appellant was charged with having been theretofore convicted of felonies. The first for house breaking; the second for robbery, and the third storehouse breaking.

In support of the motion to set aside the indictment, appellant introduced the circuit court clerk, she being the custodian of the records, who in substance testified that neither she nor her deputy had been suppœnæd to the grand jury nor testified before that body during the term at which the indictment was returned.

In addition to what she said in regard to the ab-

sence of herself and deputy from the grand jury, she stated that her records showed that the court of appeals had reversed the judgment contained in the second count, and the lower court had set aside the jury's verdict on the charge contained in the fourth count. As to whether these later showings have any bearing on the question, we need not now decide.

The contention here is not that the indictment did not charge commission of a public offense, nor that the offense of murder charged was not fortified by proper and legal evidence heard by the grand jury. Sec. 233 of the Criminal Code of Practice provides:

> "If, during the trial, the court be of the opinion that the facts charged in the indictment do not constitute an offense punishable by law, it shall order the jury to be discharged and the indictment to be quashed, and thereupon may take the proceedings directed in section 170," which provides for resubmission.

Here a public offense was clearly charged, based on proper evidence before the grand jury, and since this is true, the motion to quash was properly overruled by the court. On this point we note that appellant did not demur, nor confine his motion to set aside that portion of the indictment containing the three counts so strenuously objected to by him. It is also noted that when the commonwealth moved to dismiss the three extra counts, the appellant did not join in nor agree. It is true there was no specific objection, but his continued insistence that the entire indictment be quashed was tantamount to an objection. Counsel here overlooked the opportunity to rid the indictment of the alleged objectionable counts. Assuming for the sake of argument, that if the prosecuting officer moved for dismissal in the manner provided by the Criminal Code of Practice, Sec. 243, and Kentucky Statutes, Sec. 123, the court erred in not striking the three counts, yet we are of the opinion that there was no prejudicial error committed, because of later occurrences, preserving to appellant all his right and privileges.

The commonwealth, following its move to dismiss the three counts, did not offer evidence as to any of the alleged convictions. At the close of the commonwealth's testimony appellant again moved to quash the entire indictment on the grounds set up on the original mo-

tion, and because the commonwealth had failed to introduce proof as to former convictions. This motion the court overruled. Thereupon counsel moved the court to peremptorily instruct the jury to find the defendant not guilty upon any one of the former conviction charges. The court overruled this motion, because, as was said, no one of the three charges constituted the commission of a public offense, evidence thereupon being admissible only for the purpose of increasing the penalty. Lovan v. Com., 261 Ky. 198, 87 S. W. (2d) 381. Kentucky Statutes, Sec. 1130. The court said in regard to his ruling on this motion:

> "One of the attorneys said to the court that it was their opinion that the commonwealth had no right to strike out part of the indictment, but insisted on this motion to quash, and the court does not remember that they made any particular objection to the motion to strike part of the indictment because their motion to quash was based on the fact that these counts were contained in the indictment, and that the records did not justify the counts."

Thereby the court, in effect, sustained the motion of counsel for a peremptory instruction on the three counts. He said to the jury:

> "I want you to bear in mind that this defendant is being tried alone for the killing of Walden Napier. * * * I don't want you to let the fact that those counts were placed in the indictment that was read to you prejudice you one bit as against the defendant. Bear in mind that he is being tried here alone for the killing of Walden Napier."

When we turn to the instructions we find that the court instructed as to guilt, in proper and accepted form, solely on homicide and its degrees.

There is no doubt but the commonwealth here had the right to prove by defendant that he had theretofore been convicted of a felony, or felonies, if he offered himself as a witness, though not for the purpose of adding penalty. The defendant, when asked if he had been convicted of a felony, replied in the affirmative. The court favored appellant when he sustained an objection to the question: "How many times?"

There is some complaint of lack of evidence to sus-

tain the verdict, and that the verdict is excessive, but as we read the record we are of the opinion that it was fully justified by the proof. We also conclude that the court's ruling on the motion to quash, and on motion for peremptory did not prejudice any substantial right of accused.

The next contention is that the court erred in overruling motion for a change of venue. When the case was called, appellant moved the court to transfer the case to another county. In his petition he stated that he could not obtain a fair trial in Perry County, due to the facts that deceased was a man of prominence; belonged to a large family, having many relatives who were influential because of social and political prominence. He alleged that the feeling of such relatives and friends was bitter against him, and that this feeling was not based on a true conception of the facts. It was said that deceased was an employee of a large corporation employing numerous persons. They, and the corporation, exercised great influence and were likewise embittered. Many of the friends of deceased were good friends and relatives of the sheriff, or his deputies. This is the general trend of the petition which was supported by affidavits of two other persons.

The commonwealth raised issue by filing an answer, in which the picture was turned to the opposite. Allegations placed the accused in the position with reference to influence and feeling in his behalf, as he had placed the deceased. The record shows that oral evidence had been taken in court upon this motion; it is not made a part of the record, hence it is without our power to review on this question in order to determine whether or not the court abused his discretion in refusing the change, to which consideration we are confined in passing on such questions. The matter of granting the request rests solely in the sound discretion of the court. Com. v. Kelly, 266 Ky. 662, 99 S. W. (2d) 774; Hannah v. Com., 242 Ky. 220, 46 S. W. (2d) 121; Holmes v. Com., 241 Ky. 573, 575, 44 S. W. (2d) 592, and numerous cases cited in 6 Kentucky Digest, Criminal Law.

However, counsel insists that because after eleven jurors had been tentatively accepted from the regular panel, exhausting it, the court over appellant's objection directed a special venire from an adjoining county.

There was objection to this movement, but no renewal of the motion for change. It is argued, however, that because the court, on his own motion, directed veniremen to be summoned from another county, it was conclusive evidence that the court had abused his discretion in overruling the initial motion.

We discussed the question in McHargue v. Com., 239 Ky. 23, 38 S. W. (2d) 927 and Carter v. Com., 267 Ky. 640, 102 S. W. (2d) 1020. In each of these cases the facts were somewhat similar to the facts here as relating to the formation of the jury. In the Carter Case nine jurors had qualified. The court on his own motion discharged the nine, and ordered a special venire from another county. His reason was that the matter had been given wide publicity, and that deceased belonged to a large and prominent family. We held there was no abuse of discretion, as we likewise held in the McHargue Case. In that case there was a motion for change of venue or for a jury from another county. We held there was no abuse of discretion in sending to another county, although appellant objected because no proper effort had been made to obtain a jury from Cumberland County. We note in the motion for a new trial that the main objection to a jury being brought from Leslie County was because Oscar Farmer, a witness, was related to many persons there, where he was born and reared. There is no objection on the ground that no attempt had been made to obtain a jury from Perry County.

We had almost the precise question here in Sebree v. Com., 260 Ky. 526, 86 S. W. (2d) 282. There it was argued that because the court found it necessary to summon bystanders, after a number of jurors whose names had been drawn had been exhausted, it was error to overrule the renewed motion for change of venue, thus demonstrating that the court should have in the first place granted the request for a change. In that case we said:

> "On the original motion there was overwhelming evidence that the accused could secure a fair trial in Carroll county. While there may be an occasion when subsequent developments, as in the selection of a jury, disclose the propriety of changing the venue of a trial, we do not regard mere difficulty in securing a qualified jury acceptable to

both parties as in itself a sufficient showing of an abuse of discretion vested in the trial judge in the matter."

Here we cannot say that there was overwhelming evidence that a fair trial could not be had in Perry County, but we may conclude in the absence of proof on that question, that the court properly ruled, and did not abuse his discretion in overruling the initial motion, nor do we conclude from the record showing that he abused his discretion in summoning veniremen from another county. We cannot reverse a judgment on the ground stated, unless an abuse of discretion affirmatively appears. Taylor v. Com., 240 Ky. 450, 459, 42 S. W. (2d) 689; Frasure v. Com., 169 Ky. 620, 185 S. W. 146.

It is urged that the court erred in the giving of in-instruction No. 4, which predicated appellant's right to act in defense, if he believed he was in danger at the hands of deceased or Oscar Farmer. It is argued that since Gabbard and Edwards went to the "Rendevous" with deceased; were with him in Hazard, and were by his side at all times, and at the time of the difficulty, his right to shoot should have been based on apparent danger at the hands of any one or all of them.

As we analyze the evidence, taking the testimony of appellant, his witnesses, and Gabbard and Edwards, we are unable to find any substantial testimony which would lead to the conclusion that appellant at any time believed, or stated that he thought he was in danger through movements of any one other than deceased and Oscar Farmer.

Complaint is made that employed counsel for the commonwealth was permitted to say to the jury that appellant was an habitual criminal. This may have been justified by the appellant's testimony (properly admitted) that he had been theretofore convicted of a felony. However this may be, we have this objection for the first time appearing in a motion for a new trial. The record does not carry the statement which was alleged to have been made to the jury, the objection of counsel at the time, nor the court's ruling thereon.

It is contended that prejudicial error was committed because the commonwealth's attorney, after the accused had said that he had theretofore been convicted

of a felony, asked him how many times he had been convicted. The witness did not answer this question, because the court sustained appellant's objection.

Other errors said to have been committed by the admission of incompetent evidence, are not directly pointed out to us. We may say that a careful reading of the evidence does not disclose prejudicial error in this respect. Here there was proof, and admission by the appellant, that he fired the shots which took the life of deceased. The only question in such cases to be decided by the jury is whether or not the act of the accused is excusable, because committed in his defense. Admission by the accused that he killed Napier made it incumbent upon him to furnish proof that his act was excusable, under all the facts and circumstances. Whether or not he has so done is and as has always been, under our repeated decisions in like cases, a matter peculiarly for the jury, Lickliter v. Com., 255 Ky. 471, 74 S. W. (2d) 918, 922, unless defendant's proof uncontradictedly establishes his defense without the possibility of doubt. See Privitt v. Com., 271 Ky. 665, 113 S. W. (2d) 49.

After a review of the entire record, observing carefully the grounds urged for reversal, we are of the opinion that appellant was accorded a fair trial, hence we are compelled to and do now affirm the judgment.