## Reed v. Commonwealth.

Jan. 9, 1940.

Thomas D. Shumate and J. M. Wolfinbarger for appellant.

Hubert Meredith, Attorney General, and W. Owen Keller, Assistant Attorney General, for appellee.

OPINION OF THE COURT BY JUDGE PERRY—Affirming.

The appellant, Alva Reed, seeks the reversal of a judgment convicting him of assault with intent to rob and fixing his punishment at twenty-one years' confinement in the state reformatory.

The punishment for this crime, denounced by Section 1160, Kentucky Statutes (which was confinement in the penitentiary for not less than five nor more than twenty years), was increased by the Legislature in 1934 to imprisonment in the penitentiary for twenty-one years or for life or death in the discretion of the jury. 1934 Acts, chapter 50, page 157.

The facts developed by the testimony of the commonwealth witnesses are as follows:

On the morning of March 9, 1937, the appellant, Alva Reed, came to the home of W. H. Truitt (then a man some eighty years of age), located near Furnace, Estill county, Kentucky, and asked him to go with him to the nearby farm of his brother, Allen Reed, to look at a sick cow and advise him what was the matter with her. Complying with this request, he went with appellant to the Reed farm and as he was looking for the sick cow, which was never found, the appellant stepped out of a henhouse or one of the farm buildings with a shotgun and a sealed envelope, which so concealed the paper it contained as to leave only a small blank space of it exposed, and commanded Mr. Truitt, at the "point of

the gun," to sign it. Complaining witness states that he, when so assaulted, was forced to sign the paper without being informed what it was, but that appellant, just before leaving him, had told him the paper he had signed was a check.

Upon trial, this check was introduced in evidence upon its being first identified by Truitt as bearing his signature and as being the same paper which he had been forced by defendant to sign when assaulted by him. Also other witnesses, familiar with Truitt's signature, testified that it was his signature which appeared upon the check in evidence.

It is further shown by the evidence that later in the day on which this assault occurred, the appellant presented this check, signed by Truitt and made payable to Willard Chaney for $600 and marked "in payment of land," to the Powell County Bank, upon which it was drawn, demanding its payment.

Mr. Gabbard, the cashier of the bank, testifies he refused to cash the check when presented by defendant, because his suspicions were aroused as to the check's being regular by the conduct of appellant when presenting it and certain erasures which appeared upon its face and that a discussion having arisen between them over the non-payment of the check, he wrote out a like check, in proper form, which he gave appellant with the direction that he get Truitt to sign it. Mr. Gabbard further testifies that, at the same time, he sent a messenger to Truitt to inquire if he meant this check he had given the defendant to be paid.

On the following day, appellant returned to the bank, with the check signed by Truitt as directed, and demanded payment of it. As information, in the meantime, had been received by Mr. Gabbard, through his messenger sent to Truitt, that the check was not to be cashed, he ordered appellant arrested.

Further Mr. Gabbard testifies that the appellant afterwards told him, when in jail, that Willard Chaney fixed up the check and that he and the two Chaneys were to get the money on it; that they all three were partners and each was to get a third of the $600 gotten on Truitt's check.

Following the defendant's alleged commission of this offense, he was indicted therefor at the February, 1938, term of the Estill circuit court, whereby he was

accused of the offense, denounced by Section 1160, Kentucky Statutes, of assaulting W. H. Truitt "with an offensive weapon, with intent to rob."

The manner and form of committing the charged offense is thus described in the indictment:

"The said Alva Reed in the said county of Estill, on the 23rd day of February, 1938, and within twelve months before the finding of the indictment, did unlawfully and wilfully, feloniously and maliciously make an assault upon Wm. Truitt with a pistol, a deadly weapon, with the felonious intent then and there to rob said Wm. Truitt of his money and property of value."

Upon the cause coming on for trial, on this indictment, the defendant entered a plea of not guilty and filed also a demurrer to the indictment, which was overruled by the court.

The commonwealth, to maintain its side of the issue, then proceed d to introduce its evidence. At the conclusion of its introduction, the defendant by counsel moved the court to enter a directed verdict for the defendant, which motion was overruled.

The defendant thereupon declining to testify in his own behalf or to offer any evidence in his defense, the court on its own motion instructed the jury.

By instruction No. 1 the jury was told that if it "believe from the evidence beyond a reasonable doubt, that in this county and before the finding of the indictment herein, the defendant, Alva Reed, did unlawfully, wilfully, feloniously and maliciously make an assault upon William Truitt, with an offensive weapon with the felonious intent then and there to rob the said William Truitt, of his money and property of value, you will find the defendant guilty and fix his punishment by confinement in the state reformatory for twenty-one years or for life or by death, in your discretion."

Instruction No. 2 defined the terms used in instruction No. 1 and instruction No. 3 was the usual reasonable doubt instruction.

The jury, under these instructions of the court, and after hearing only the evidence introduced in behalf of the commonwealth, returned its verdict finding the defendant guilty as charged and fixing his punishment at 21 years' confinement in the state reformatory.

Defendant appeals, asking a reversal of the judgment upon the following grounds:

(1) The court erred in overruling the demurrer to the indictment.

(2) The court erred in not peremptorily instructing the jury to find a verdict of not guilty at the conclusion of all the evidence.

(3) The court permitted the appellee to introduce incompetent evidence to the jury over the objections and exceptions of the appellant.

(4) The court erred in its instructions to the jury, (a) in that the instructions given were erroneous, and (b) because the court did not give the whole law of the case.

Appellant, by counsel, argues in support of the first of these grounds (that the indictment is defective and his demurrer thereto should have been sustained) that the accusatory part of the indictment charges appellant with the offense of assault "with an offensive weapon, with intent to rob," while by its descriptive part, alleging the manner in which the offense was committed, it charges, not that it was committed with an "offensive weapon," but that the weapon described as used in its commission was "a pistol, a deadly weapon," and that because of such non-conformity in the two parts of the indictment in respect to the weapon used in making the charged assault, it is defective in that there is a material variance between the accusatory and descriptive parts of the indictment, making it demurrable, with the result that the trial court's overruling of defendant's demurrer thereto was erroneous.

We do not view this contention as being of such merit as calls for any lengthy discussion of it, as it is patent that the defendant could have been in no wise misled by the mere change made in the words used in the descriptive part of the indictment, that the assault was committed with "a pistol, a deadly weapon," rather than with an "offensive weapon," employed in its accusatory part and following the language of the statute upon which drawn—but even if technically objectionable, such error of form is not to be weighed as a material or prejudicial variance.

As said in the case of Fugate v. Commonwealth, 177 Ky. 794, 198 S. W. 240, 242:

"It is well known that our Civil Code, in so far as applicable, governs criminal procedure, and Section 129 thereof says that: 'No variance between pleadings and proof is material, which does not mislead a party, to his prejudice, in maintaining his action or defense upon the merits.' "

Further in the Fugate case there is quoted with approval the following practical considerations influencing the rules of practice of criminal law from Overstreet v. Commonwealth, 147 Ky. 471, 144 S. W. 751, 752, where the court had under consideration an indictment for arson, which was conceded to be technically bad:

"But the strict and technical rules of criminal pleading that prevailed at common law and for many years in this state have been superseded by the more just and sensible practice that declines to be controlled by unimportant and unsubstantial forms that serve to delay and obstruct the administration of the criminal law, without protecting the accused in any right guaranteed to him by either the common law, or the Constitution or the statutes of the state. * * *

"In other sections, there are provisions further regulating the practice in respect to indictment; but the essential things are that the indictment shall contain (a) the name of the party charged, (b) the offense charged, (c) the county in which it was committed, (d) and a statement of the acts constituting the offense, in ordinary and concise language, and in such a manner as to enable a person of common understanding to know what is intended, and such degree of certainty as to enable the court to pronounce judgment on conviction according to the rights of the case. It is apparent that when an indictment furnishes this information the accused cannot be misled or deceived by it, or fail to know what offense he is charged with; nor will the court be in doubt when it comes to pronounce judgment."

The right of every one accused of crime to be informed of the nature of the accusation has long been established, and requires that the offense be charged with such clearness and certainty as is necessary to apprize the accused of the crime of which he stands charged.

We think these rules and principles as quoted are particularly applicable here.

The use of the different terms, "offensive weapon" and "deadly weapon," respectively, in the accusatory and descriptive parts of the indictment to describe the instrument used or means employed in committing the alleged assault, certainly constituted no material variance or caused such non-conformity between the two parts of the indictment, as would prevent "a person of common understanding" from knowing what it intended, as it is patent that a "deadly weapon," generally recognized and known to be an "offensive weapon," comes within the scope and meaning of such descriptive words or language of Section 1160, Kentucky Statutes, under the provisions of which this indictment was drawn.

Section 1160, Kentucky Statutes, reads as follows:

"If any person, with an offensive weapon or instrument, shall unlawfully and maliciously assault, or in or by any forcible and violent manner, demand any money, goods or chattels, bond, bill, deed or will, or other evidences of right, or other thing of value of or from any other person, with an intent to rob or commit a robbery upon such person, he shall be guilty of a felony and upon conviction shall be punished by confinement in the State Penitentiary for twenty-one years or for life, or by death, in the discretion of the jury."

In the case of Little v. Commonwealth, 246 Ky. 806, 56 S. W. (2d) 526, 527, the court, when having before it, there as here, the question of what is the proper construction of this statute, said:

"Though the statute was differently construed in Chappell v. Commonwealth, 200 Ky. 429, 255 S. W. 90, we have recently (in Hannah v. Commonwealth, 242 Ky. 220, 46 S. W. (2d) 121) overruled that case, and returned to the former rule that the statute does not contain two offenses, but prescribes only one offense, which may be committed in two different ways, and that under the first provision the crime consists in the commission of an unlawful and malicious assault with an offensive weapon or instrument, with the felonious intent to rob the person assaulted, while under the second provision the gravamen of the offense is the act of demanding

money or property in a forceable and violent manner with the intent to rob. Taylor v. Commonwealth, 3 Bush 508.'' (Parenthesis ours.)

Here the indictment charges the defendant with committing an assault on Truitt with an offensive weapon with the intent to rob him, or, that is, sets out the offense denounced by the statute in the language of the statute, which we have frequently held to be sufficient.

Further, in Hannah v. Commonwealth, supra, we said [242 Ky. 220, 46 S. W. (2d) 124]:

"A careful reading of this section discloses that it does not describe or contain two distinct offenses, but describes one specific offense which, however, may be committed in two different ways. This being true, it follows that an indictment charging that it was committed in either or both of the ways would be good. In the Chappell case, this court did, in effect, hold that the section of the statute under consideration contained two distinct offenses, basing such finding on the case of Taylor v. Commonwealth, supra, which was cited with approval in the later case of Commonwealth v. Tanner, 5 Bush 316. In the latter case, it is said:

" 'The offense is complete, either by making an assault with an offensive weapon or instrument, with the felonious intent to rob the person assaulted; or by demanding money, or other personal property, with such felonious intent to rob by menace, or in or by a forcible and violent manner * * *,'

"In the Taylor Case we find it was said:

" 'According to our construction of the statute, it contains two distinct provisions, one of which embraces this case, and they may be separately stated as follows:

" '1st. If any person, with an offensive weapon or instrument, shall, unlawfully and maliciously, assault any other person, with a felonious intent to rob or commit robbery upon such person; or,

" '2d. If any person shall, by menace, or in or by any forcible or violent manner, demand any money, goods or chattels, bond, bill, deed, or will,

or other evidences of right, or anything of value, of or from any other person, he shall be confined, &c.

" 'Under the first of these provisions, the crime consists in the commission of an assault with an offensive weapon or instrument, with a felonious intent to rob the person assaulted; whilst, under the second, the gravamen of the offense is the act of demanding money or property with a felonious intent to rob by menace, or in or by any forcible or violent manner.'

"A careful study of these cases discloses that they are not susceptible of the interpretation given them in the Chappell Case and this court, fell into error in construing Section 1160, supra, as containing two distinct offenses and in interpreting the Tanner and Taylor cases as so holding."

We therefore, for the reasons stated, are unable to concur with appellant's contention that the court erred in not sustaining his demurrer to the indictment.

The next objection argued is that the court erred in refusing to peremptorily instruct the jury to find the appellant not guilty at the conclusion of the evidence, for the reason that the evidence fails to prove appellant guilty of the offense alleged in the indictment, as having been committed by wilfully, etc., making an assault upon Wm. Truitt "with a pistol, a deadly weapon, with the felonious intent then and there to rob said Wm. Truitt of his money or property of value."

Counsel for appellant contends that if appellant committed the offense of assault with an offensive weapon, with intent to rob, it was the offense of so assaulting Truitt with an offensive weapon, committed by demanding in a forcible and violent manner "money, goods or chattels, bond, bill, deed or will, or other evidences of right, or other thing of value," whereas there is no evidence whatever that appellant attempted to rob Truitt of any money or goods; that Truitt, the complaining witness, himself testifies the defendant did not attempt to rob him of money or property of value, but only that he was forced by defendant, when assaulting him, to sign a blank piece of paper (that is, give a check), which counsel for appellant argues was not a giving up of his money or property of value.

Counsel for appellant insists that the indictment attempts to allege facts showing him guilty of assaulting Truitt with an offensive weapon or instrument, with a felonious intent to commit a robbery upon him, while the evidence introduced conclusively establishes the appellant guilty, not of committing the offense in such manner or in the first way, as stated supra, but in the second, if at all, by demanding money, goods, etc., from Truitt in a menacing or forcible or violent manner; and that, as the evidence does not support the allegations of the indictment or that it was committed in the manner charged, there results a fatal variance between the allegations of the indictment and the evidence introduced at the trial, which tended to show the defendant's commission of the offense in a different manner from that charged in the accusatory part of the indictment.

Clearly, this argument must be dismissed with the same pronouncement, that it is without merit, as the first objection urged was disposed of, for the reason that the indictment here did, in its accusatory part, allege that the offense denounced by Section 1160, Kentucky Statutes, upon which it was drawn, was committed by the defendant's making an assault upon the complaining witness, Truitt, with an offensive weapon with intent to rob, which is sufficient under the authorities cited, to charge the commission of the offense in one of the two distinct ways set out in Section 1160.

The evidence for the commonwealth given by the complaining witness, Truitt, clearly tended to show that the defendant made an assault upon him with a shotgun with intent to rob him. The fact that what he wished to rob him of, by means of the assault made on him, was his signature to a check rather than money, property or thing of value, while menacing Truitt or acting in a violent manner, is immaterial, as that method is but the second means or manner provided by the statute in which the one offense of committing an assault with intent to rob may be committed.

The indictment, as stated in the Hannah case, supra, may charge the defendant with committing this offense of assault with intent to rob and if the evidence is found by the jury to be sufficient to establish defendant's commission of it by either of the means charged, it is sufficient to support a conviction.

Also, appellant contends that the court erred in permitting Truitt to testify that the appellant committed the assault upon him with a shotgun, in that such evidence did not follow the allegations of the indictment, which alleged he committed it with a pistol or deadly weapon.

It is patent, without further comment, that as the evidence showed the charged assault was committed with a deadly weapon, or with a shotgun rather than with a pistol, each of which is both a deadly and an offensive weapon, as charged in the indictment, the contention that the court erred in permitting the witness to state that the deadly weapon used by the defendant in making the assault on him was a shotgun and not a pistol, as charged in the indictment, is not to be sustained as constituting a fatal or material variance. Counsel for appellant argues that the commonwealth, in failing to show the crime was committed in the exact manner or with the exact kind of deadly weapon alleged in the indictment, presented no competent evidence conducing to show the offense was committed in the manner charged and therefore that the court erred in overruling motion of counsel for defendant for a peremptory instruction to find in his favor.

It needs no discussion or argument to stamp such reasoning as specious and altogether without merit.

Appellant's final objection is directed at the instructions given.

He complains that instruction No. 1 is based upon the theory that defendant was charged with having committed the offense in the manner set out by the first provision of the statute, whereas the evidence showed it was committed, if at all, in the manner described by its second provision.

However, we do not concur in this, as it is apparent that the court was of the opinion that the offense charged was committed in the manner described in the first provision of Section 1160; that is, that defendant, with an offensive weapon, did unlawfully assault Truitt with the felonious intent to rob him.

The instruction given up to this point was complete, as following the language of the statute, and the fact that there was added thereto the words "of money or

property of value" did not have the effect of making the instruction erroneous.

The words so used in the instruction, where they served to add nothing to the adequacy of the instruction as given, may be treated as surplusage and therefore may be considered omitted.

Also, the further point is made that the instructions as given are erroneous in that they do not give the whole law of the case, in that they failed to instruct on assault and battery.

Assault and battery is a degree of the crime of assault with intent to rob, and an instruction on assault and battery should be given when authorized by the evidence. Herron v. Commonwealth, 247 Ky. 220, 56 S. W. (2d) 974.

Here, however, as in the Herron case, all the evidence introduced showed that the assault, if made, was solely for the purpose of robbery and that appellant was either guilty of the offense of assault with intent to rob, or was not guilty at all.

Such being the situation, we are of the opinion that no error was committed by the court in failing to give an instruction on assault and battery, because there was here introduced no evidence to which the giving of such an instruction could have been directed.

We are therefore of the opinion, for the reasons hereinabove stated, that the judgment should be and it is affirmed.