Elmer TINSLEY, Appellant,

v.

COMMONWEALTH of Kentucky, Appellee.

Court of Appeals of Kentucky.

March 25, 1955.

Rehearing Denied Oct. 28, 1955.

Chat Chancellor, Frankfort, for appellant.

J. D. Buckman, Jr., Atty. Gen., William F. Simpson, Asst. Atty. Gen., for appellee.

STEWART, Chief Justice.

Appellant, Elmer Tinsley, was jointly indicted with his brother, Gilbert Tinsley, for the offense of grand larceny. Gilbert Tinsley, upon a separate trial, was convicted of that crime and received two years in the penitentiary. We affirmed the judgment on an appeal by him in Tinsley v. Commonwealth, Ky., 261 S.W.2d 11. Appellant was thereafter tried and convicted on the same charge and the punishment imposed by the jury was confinement in the state penitentiary for a period of one year.

Reversal of the judgment is sought: (1) Because of the failure to grant a change of venue; (2) because of refusal to give a directed verdict for appellant at the close of all the evidence; (3) because it is claimed incompetent evidence was admitted; and (4) because of so-called improper argument by the Commonwealth's attorney before the jury.

In the petition for a change of venue it is avowed the prosecuting witness, Laban Jackson, whose sheep were stolen, is an influential citizen in the business, financial, social and political affairs of Shelby County, with relatives and friends scattered among a large proportion of the people of the county; that passion and prejudice have been aroused because of the widespread theft of sheep and other livestock in the county; and that in view of the prosecuting witness' varied and extensive connections and by reason of the state of the then existing public opinion appellant could not procure a fair and impartial trial in Shelby County.

One of the supporting affidavits averred the affiant had read the petition and he believed the statements contained in it were true, and it was his opinion an unfavorable attitude against appellant prevailed in Shelby County. The other supporting affidavit was much stronger, the affiant stating, among other things, that he had sat on a previous jury which had tried appellant's brother, Gilbert Tinsley, for the same crime, that several members of the panel did not believe Gilbert Tinsley was guilty as

charged, but that others on the jury stood for a conviction regardless because they contended someone had to be sent to the penitentiary as an example in order to break up the stealing of livestock in the county. With the people in such a frame of mind, that affiant did not think appellant would receive equitable treatment at the hands of any jury in the county. Appellant's counsel, testifying relative to the trial of Gilbert Tinsley, whom he had likewise represented, claimed there had been much open agitation and pressure for a conviction of Gilbert Tinsley by a group of persons who had stayed at the courthouse throughout that trial, and he was convinced this hostile feeling was still prevalent and would be carried over and directed against appellant, thereby precluding him from obtaining justice in the county.

The Commonwealth filed a response to the petition and offered seven witnesses, among whom were many farmers and the county and Commonwealth's attorneys, all of whom testified that in their opinion appellant would be dealt with in a dispassionate, unbiased manner in Shelby County. We shall refrain from detailing their evidence, but we think we should point out that each witness was clear and emphatic in the belief that no undue animosity toward appellant was present and that he would not be prejudiced by a trial in that county.

The lower court, at the conclusion of the hearing, overruled appellant's petition, to which an exception was taken.

It is the prevailing rule of this state that the granting or refusing of a change of venue rests solely in the sound discretion of the trial judge, and a judgment of conviction will not be reversed because of a failure of the lower court to sustain an application for a change of venue, unless it is made to appear that such discretion was abused. See Hannah v. Commonwealth, 242 Ky. 220, 46 S.W.2d 121, and the cases cited therein. This statement appears in Mansfield v. Commonwealth, 163 Ky. 488, 174 S.W. 16, 18, and we believe this language therein applies with much force to this case: "The circuit judge is one of the

chief judicial officers of the state, it being his highest duty to administer the laws of the state so as to secure both to the commonwealth and the accused a fair trial; and, when he has denied the motion (for a change of venue), the presumption is that his ruling was influenced solely by his honest conviction that the defendant could have a fair trial in the county."

After a careful reading of the record we concur in the conclusion the trial judge reached that appellant could have a fair and impartial trial in Shelby County.

Turning now to the evidence, which it becomes necessary to summarize in order to determine the next error assigned, the prosecuting witness, Laban Jackson, testified that on August 11, 1948 twelve lambs owned by him were missing, all signs indicating they had been stolen the preceding night. He secured the aid of the sheriff, Hubert Gordon, and that of John Isham, a detective of the Kentucky State Police, and through what Jackson called a "lead" these three forthwith proceeded to the farm of appellant and his brother. This particular farm was operated jointly by them and they and their families lived in one house on it.

Arriving at this farm these three persons asked permission from a woman at the house, supposedly a wife of one of the Tinsleys, to go and look "down in the field where the bunch of lambs were" grazing. Their request was granted and they proceeded on to the flock of sheep where, according to Jackson, eight or ten of the lambs were immediately recognized by him as his property. While they were examining the sheep one of the Tinsleys approached them ("I don't remember which one it was," Jackson testified; but this particular Tinsley was later identified as appellant), and inquired what their mission was. Upon being informed they were searching for Jackson's missing lambs, they were told by him to "help yourself." It was getting late by this time, so the sheriff instructed Tinsley to leave the lambs undisturbed, as they were returning the next day to go through them, sort them out and restore Jackson's lambs to him. This he promised to do.

The next morning before breakfast Jackson counted his own sheep on his farm and discovered eight lambs had been added to his flock during the night, four of which were identified as his lambs that had been stolen and four of which were not his property. Car tracks on the shoulder of the road alongside the field where the lambs were left, strands of wool on the top wire and grass trampled down on each side of the fence indicated the lambs had been lifted over the fence from a truck.

Later in the day, Jackson caused a writ of claim and delivery to issue from the Shelby Quarterly Court to take twelve sheep he claimed as his from the possession of the Tinsleys. When the sheriff served this writ, Jackson was able to pick out only four lambs in the flock of the Tinsleys' as his. These were delivered to him by the sheriff and the record discloses that neither of the Tinsleys appeared in court at the trial to resist Jackson's proceeding to repossess the four lambs.

Charles Bowling, an employee of Jackson's, testified he was able to identify as Jackson's property four of the lambs found on the farm of the Tinsleys. Genevieve Tinsley, the wife of Gilbert Tinsley and a witness for the Commonwealth, testified she heard her husband and appellant discussing the proposed theft of Jackson's Lambs and debating as to the risk involved in stealing them. According to her, this is the way the argument ended: "Then I heard Gilbert say he didn't want to bother them and Elmer insisted to go ahead and get them."

Appellant denied he stole any lambs from Jackson and maintained he and his brother were the owners of all the sheep located on their farm on the occasion in controversy. Gilbert Tinsley testified he bought fourteen lambs on August 4, 1948, from one Sam Ford in Lexington, and it was some of these recently purchased sheep that Jackson claimed as his lambs. Two other witnesses for appellant stated they saw Gilbert Tinsley haul a truck load of sheep to the

farm a few days before Jackson came there in search of his missing lambs.

■ In Tinsley v. Commonwealth, which we have already called attention to as a case involving the conviction of appellant's brother, Gilbert Tinsley, we set forth the well-established rule that possession of stolen property shortly after the theft is not only presumptive evidence of guilt, casting upon the accused the burden of showing his innocence by explaining such possession to the satisfaction of the jury, but such a fact is of itself sufficient to sustain a conviction of larceny. Many cases were cited in that opinion to substantiate the foregoing rule.

■ In the present case, if we give credence to the testimony of the prosecuting witness, Jackson, and to that of Bowling, as the jury most likely did, we have uncontradicted proof that some of Jackson's stolen lambs were found in appellant's possession. His probable guilt is increased by the further evidence of his sister-in-law who heard him tell his brother "to go ahead" with the stealing. In addition, when the Tinsleys had knowledge they were under suspicion, all but four of the eight or ten lambs that Jackson had recognized on their farm as his property vanished therefrom and four of the stolen lambs reappeared in Jackson's flock, brought back under cover of darkness by persons a jury could believe were the Tinsleys. We have no hesitancy in concluding the evidence of the Commonwealth was sufficient to warrant submission of the question of appellant's guilt to the jury and it was ample to sustain the verdict.

Two complaints are made relative to the admission of alleged incompetent evidence introduced by the Commonwealth. The detective of the Kentucky State Police, Isham, assisted in the investigation of the stolen lambs and testified over appellant's objection that " * * * there were about ten of the lambs that was his." "His" had reference to Jackson. It is asserted at the time this evidence was given this witness had never previously seen any of Jackson's lambs and therefore could not possibly have known that the lambs in controversy found in appellant's possession were owned by Jackson.

■ This statement was of course hearsay and should have been ruled incompetent, since this witness was merely repeating what Jackson had told him and the sheriff on their first visit to the farm of the Tinsleys. However, we do not consider this error a harmful one. Jackson had already testified to practically this identical fact, and we do not believe the addition of this officer's inadmissible evidence to similar competent testimony already well established in the minds of the jury misled them to the prejudice of appellant's substantial rights.

■ Another criticism is directed at certain evidence of Charles Bowling, an employee of Jackson. This witness in testifying refreshed his memory by consulting notes in a book he drew out of a pocket of his clothing. He alluded to it as "my book." It is contended it was not shown when and by whom the notes were made and, hence, any reference to them was improper. We should say, first, that we do not believe the testimony this witness gave from the notes had any vital bearing one way or the other on the outcome of this case, and, next, although no one questioned him on the point, one would naturally assume that all the entries in this book were made by him, because he denominated it "my book."

■ The next complaint is the Commonwealth's attorney was guilty of misconduct when he stated to the jury that neither appellant nor his brother ever appeared in quarterly court to contest the claim and delivery proceeding instituted against them by Jackson, with the result that the latter was able to secure a judgment by default for the sheep seized from them. The evidence clearly infers this was a proper subject to be commented upon.

Wherefore, finding no reversible error in the record, the judgment is affirmed.