## Fugate v. Commonwealth.

(Decided November 20, 1917.)

### Appeal from Breathitt Circuit Court.

1. **Perjury—False Swearing—Evidence.**—Upon the trial of one indicted for false swearing or perjury the alleged false statements need not be literally proven, but it is necessary only that the Commonwealth should prove them substantially as charged.

2. **Perjury—False Swearing—Witnesses.**—A conviction for false swearing or perjury may not be had upon the testimony of only one witness as to the falsity of the oath, but such falsity must be proven by as many as two witnesses, or one witness and strong corroborative circumstances.

3. **Perjury—False Swearing—Variance.**—Where an indictment for false swearing charged the defendant with having met a person in a field near another's house, and the testimony showed that the defendant swore at the time he gave the alleged false testimony that he met that person in the bottom, toward the house mentioned, and the facts showed that the field was in and was a part of the bottom, there was no fatal variance, the statements proven being substantially the same as those alleged in the indictment.

A. F. BYRD, A. H. PATTON and A. S. JOHNSON for appellant.

CHARLES H. MORRIS, Attorney General, and D. H. HOWERTON, Assistant Attorney General, for appellee.

OPINION OF THE COURT BY JUDGE THOMAS—Affirming.

The appellant was indicted by the grand jury of Breathitt county charged with the offense of false swearing, and upon his trial under a plea of not guilty was convicted and his punishment fixed by the verdict of the jury at one year's confinement in the penitentiary. His mo-

tion for a new trial having been overruled and judgment pronounced, he seeks a reversal thereof by this appeal.

The alleged false oath was made by the defendant in his testimony as a witness for his brother in a trial of the latter in the same court upon the charge of having murdered Green Noble on Lost creek in Breathitt county.

But two grounds are relied upon and urged before us for a reversal, they being (1) that there is a fatal variance between the allegations in the indictment setting forth the false oath and the testimony as to what plaintiff swore, and (2) that the evidence was not sufficient under the rule applicable to this character of offense to authorize a conviction.

Considering these objections in the order named, the indictment charges that the defendant upon the trial of his brother under the charge of murder "did corruptly and falsely state on said oath that at the time and immediately after the killing of Green Noble by Grover C. Fugate on Lost creek, the said Nathan Fugate met one Billy Noble, a witness in said case, at the upper end of and near Harrison Napier's field."

The defendant and the stenographer who took notes of his testimony on the trial of his brother under the charge of murder upon this trial testified that what the defendant swore upon that trial was as follows:

"I met him (referring to Billy Noble) up there in the bottom coming down through the bottom; I first met Shuffalo Noble and just after I crossed the creek and was going up through the bottom up there at Harrison Napier's I was bleeding, this place was all bleeding, and I had throwed my hand up and got blood off of my shirt and Shuffalo said, 'What is the matter?' "

It is contended that the discrepancy between the allegations of the indictment and the testimony of the defendant and that of the stenographer constitutes the fatal variance insisted upon.

Before further considering the question, it is well to direct our attention briefly to the salient facts, which are: The place where Green Noble was killed, and for which plaintiff and his brother and perhaps others were subsequently indicted, is 100 or 200 yards beyond the lower end of a bottom field belonging to Harrison Napier, who seems to reside somewhere near the upper end of that field, which is perhaps between a quarter and a half mile long. At least a part, if not all, of the field is in the bottom, as we gather from the record, and a short

while after the shooting resulting in the fatal wounding of Green Noble, the latter's father, Sol Noble, with a pistol, ran the defendant, Nathan Fugate, away from the scene, and in doing so shot him, inflicting a wound which did not prove fatal or even serious. After crossing the creek and going up toward Harrison Napier's house, the defendant claims to have first met Shuffalo Noble, and that after meeting him he met Billy Noble. Billy Noble had testified upon the murder trial that he was at the scene of the fight throughout, and saw all of it, and testified to facts detrimental to plaintiff's brother. The statement which plaintiff made as a witness in that case was for the purpose of showing that the witness, Billy Noble, had testified falsely, because as a matter of fact he was not present at the fight. So that the material falsity of defendant's statement while testifying for his brother was that he met the witness, Billy Noble, going to the scene of the fight as defendant was going up the bottom either in or out of the field toward Harrison Napier's house, located, as we have seen, somewhere about the upper end of the field.

It is a well settled rule of criminal pleading applicable to this character of offense that the exact words charged in the indictment need not be proven, but that it is necessary only to prove their substance, and if they are substantially proven the variance will be immaterial. Roberson's Criminal Law, vol. 1, sec. 352; 30 Cyc. 1442; Taylor v. State, 48 Ala. 157; Martinati's v. Peoples, 223 Ill. 117; Hereford v. People, 197 Ill. 222; State v. Frisby, 90 Mo. 530; State v. Groves, 44 N. C. 402; Gandy v. State, 23 Neb. 436; Bradford v. State, 134 Ala. 141; Commonwealth v. Butland, 119 Mass. 317, and many other authorities which might be cited.

In line with the general rule of criminal practice just stated, this court, in the case of Overstreet v. Commonwealth, 147 Ky. 471, where it had under consideration an indictment for arson which was conceded to be technically bad, said: ''But the strict and technical rules of criminal pleading that prevailed at common law and for many years in this state have been superseded by the more just and sensible practice that declines to be controlled by unimportant and unsubstantial forms that serve to delay and obstruct the administration of the criminal law without protecting the accused of any right given to him by either the common law, or the constitution, or the statutes of the state.''

Further along in the same opinion, addressing itself to the essentials of an indictment, the court said:

"In other sections there are provisions further regulating the practice in respect to indictment, but the essential things are that the indictment shall contain (a) the name of the party charged, (b) the offense charged, (c) the county in which it was committed, (d) and a statement of the acts constituting the offense, in ordinary and concise language and in such a manner as to enable a person of common understanding to know what is intended, and such degree of certainty as to enable the court to pronounce judgment on conviction according to the rights of the case. It is apparent that when an indictment furnishes this information, the accused cannot be misled or deceived by it or fail to know what offense he is charged with, nor will the court be in doubt when it comes to pronounce judgment."

As we have seen, the facts show that Harrison Napier's field and some uncleared land are in the bottom, and the only possible variance is whether the place where the defendant stated in the murder trial that he met Billy Noble and the place where he states in this trial that he met him are substantially the same places, both of them being in the bottom. Suppose the statement in the indictment had been that the defendant falsely swore that he met Billy Noble in the bottom as he went away from the scene of the fight about 200 yards from a designated natural object, and the proof upon the indictment for having so falsely sworn would have been that defendant stated that the meeting was about 400 yards from the natural object, could it then be said that the discrepancy would constitute a material variance? Or, if he had said that he had met the witness in the murder trial as he went away from the fight at a certain bridge when the proof showed that he met the witness at some stream over which there was no bridge, could there then be said to be a material variance? We think not, in either of the illustrations.

It is well known that our Civil Code, in so far as applicable, governs criminal procedure, and section 129 thereof says that "No variance between pleadings and proof is material which does not mislead a party to his prejudice in maintaining his action or defense upon the merits."

Section 131, in defining material variance, says: "If, however, the allegation of the claim or defense, to which the proof is directed, be unproved, not in some particular or particulars only, but in its general scope and meaning,

it is not to be deemed a case of variance within the last two sections, but as a failure of proof.''

The gist of the charge against the defendant here is that he falsely swore that in going up the creek (shown by other facts to be toward Harrison Napier's house) away from the scene of the fight he met Billy Noble. Whether the path traveled by him in his flight was in the field, which was in the bottom, or outside of the field, in the same bottom, cannot make any material difference. It is not a failure to prove the charge ''in its general scope and meaning,'' and evidently did not mislead the defendant to his prejudice.

But apart from this, there is yet sufficient evidence to sustain the verdict confining the proof to the precise statement charged. On this trial Sol Noble, a witness for the Commonwealth, testified that on the murder trial the defendant swore that he met Billy Noble as he went away from the place of the killing ''coming down through Harrison Napier's field.'' ''Q. Mr. Noble, you say the witness mentioned Harrison Napier's field and stated he met this fellow in it? A. Yes, he said he met him up in the field. I think without a doubt he mentioned Harrison's field; I think he said he met him up in the field. Q. I will ask you if this was not the statement that was made, 'I met him up there in the bottom, coming down through the bottom'? A. I think he said Harrison's field.''

C. J. Noble, another witness for the Commonwealth, was asked and answered this question: ''Q. Where did he (defendant) say he met him (Billy Noble) immediately after the killing? A. My understanding what he said about meeting Billy Noble and Mr. Fugate as he went up through the field, I thought he said just after the shooting he got on the inside of the fence and as he went through the field he met Mr. Noble up in there.'' . . . ''Q. Did he say Harrison Napier's field? A. I think he did, is my judgment about it.''

So that two witnesses for the Commonwealth testified that the testimony of the defendant on the murder trial charged in the present indictment with being false was practically the same as the indictment alleged, and was sufficient to authorize the jury to so find.

It is insisted (2) that the falsity of the testimony is not proven by two witnesses, or one witness and strong corroborative circumstances as required in this character of cases (Commonwealth v. Davis, 92 Ky. 460), but in this we think counsel are mistaken. Billy Noble testified

positively that he did not meet the defendant either in Harrison Napier's field or in the bottom where the field is located, or at any other place, as he went to the place of the killing. On the contrary, he states that he was there before the fight and remained throughout it and saw the defendant as he fled from the scene. The witness Shuffalo Noble, whom the defendant acknowledges that he met while fleeing from the fight and before he met Billy Noble, testified that he did meet the defendant fleeing from the scene some 100 or 200 yards from it as witness was on his way there, and that when witness arrived at the scene Billy Noble was there. Other witnesses testify that directly after the shooting they, placing the time at from one to four minutes, saw Billy Noble there leaning against some object within about twenty feet from the spot where Green Noble was shot and fell. Even if it could be said that Billy Noble could have arrived after the shooting and during and within the time that those witnesses saw him, we yet have the testimony of Billy Noble as to the falsity of defendant's testimony, as well as the corroborating circumstance that Shuffalo Noble immediately after meeting the defendant near the place of the killing (going away from that place and later and further away meeting Billy Noble as he claims) upon arrival at that place found Billy Noble there. This testimony of Shuffalo Noble, taken in connection with the fact that defendant himself admits that he met Billy Noble after meeting Shuffalo Noble at a point further away from the place of the fight, furnishes to our minds a strong corroborating circumstance showing that the defendant did not meet Billy Noble after meeting Shuffalo Noble. We, therefore, conclude that defendant's second contention is not supported by the record.

Wherefore, the judgment is affirmed.