## Miller v. Commonwealth.

(Decided May 6, 1930.)

W. J. STONE for appellant.

J. W. CAMMACK, Attorney General, and SAMUEL B. KIRBY, JR., Assistant Attorney General, for appellee.

OPINION OF THE COURT BY JUDGE CLAY—Affirming.

T. J. Miller appeals from a judgment convicting him of grand larceny and fixing his punishment at two years' imprisonment.

The facts are these: The Belvey Straight Creek Coal Company owns a mine on Four Mile creek in Bell county. The mine is operated by electricity, and copper wire is used for that purpose. William Lewis, who owned substantially all the stock of the company and operated the mine, had been missing some of the copper wire. Being convinced that it had been stolen, he offered a reward for the apprehension and conviction of the thief.

With the view of apprehending the thief, Lewis, accompanied by his brother, Lon Lewis, and two deputy sheriffs, Cleveland Bailey, and Joe Manning, went to the mine. Manning remained at the mouth of the mine while the others went into the mine to the mouth of a cross entry, where they waited. About an hour and a half later they heard a mine car coming down the slope toward the mouth of the mine, and placed a cross-tie on the track to stop it. As the car approached the mouth of the cross entry, flashlights were turned on the car, and appellant Miller and Matt Shelton were seen riding in the car. Appellant and Shelton immediately drew their pistols, and about the same time the car struck the cross-tie and was wrecked. Shelton was thrown from the car, and appellant was either thrown out or jumped out. Appellant ran down the track and out of the mine as the Messers Lewis and Bailey called to him to stop and fired several shots in his direction. Shelton was arrested while in the mine, and appellant was arrested by Deputy Sheriff Manning as he came out of the mine. At the time of his arrest appellant was carrying a pistol in his hand. There were found in the car in which appellant and Shelton were riding four bundles of copper trolley wire cut into short lengths, and an old track adz. The bundles of wire weighed 204 pounds, and there was evidence that they were of the value of $56.

Shortly after he was arrested appellant stated that he was caught, but this was the first time he had ever taken any of the wire. On the other hand, appellant testified that on the night in question Shelton came to his house and asked him to go inside the mine, as he wanted to get some pliers and screwdrivers that his brother Tom had left in there and work on an automobile. They then went into the mine, and Shelton walked up and uncovered the copper wire, and said, "Here is the tools I have come after. Don't you tell this on me." I said, "It is not any of my business." He said, "I will give you $4.00 if you will help me take it to Bill Lewis' store and put it in the car." He did not remember whether he told Shelton he would or would not. Shelton then put the wire in the car and asked him to get in if he wanted to ride back outside. When he went into the mine, he did not know that Shelton had the wire. In the affidavit of Shelton filed in support of appellant's affidavit for a con-

tinuance Shelton stated that appellant had nothing to do with the cutting or taking of the wire.

In view of the circumstances under which appellant was found in the car with the copper wire, and of the improbability of the story told by appellant and Shelton, and of the further fact that appellant not only drew his pistol, but attempted to escape, thus negativing the theory that he was on an innocent journey, there can be no doubt that the evidence of appellant's guilt was sufficient, not only to take the case to the jury, but to sustain the verdict.

Appellant's principal contention is that there was a variance between the indictment and the proof, in that the indictment charged that the copper wire and other articles taken were the property of the "Straight Creek Coal Company," whereas the evidence showed that they were the property of the Belvey Straight Creek Coal Company. The only witness on the question of ownership was W. E. Lewis, who gave the name of the corporation as "Belvey Straight Creek Coal Company," but stated that the mine was sometimes called "Straight Creek Coal Company." As a general rule, variances between the indictment and proof are not regarded as material, unless they are such as to mislead the accused in making his defense, or to expose him to the danger of a second conviction for the same offense. Lowrey v. Commonwealth, 191 Ky. 657, 231 S. W. 234. While it is true that, if the ownership be laid in a corporation under what purports to be its corporate name, and the proof shows the owner to be a corporation of a different name, and there is no evidence connecting them and showing their identity, the variance is fatal. However, if it is established beyond a reasonable doubt that the corporation proved upon trial to be the owner is the same corporation as that in which the ownership is laid in the indictment, the fact that the name stated in the indictment is not its true corporate name will not usually be considered a fatal variance, especially if the name stated in the indictment is the one under which it is generally known or by which accused knows and will recognize it. 36 C. J. 862 sec. 411.

Here there was no evidence that there were other companies known as the Straight Creek Coal Company. On the contrary, the proof shows that, although the

technical name of the corporation was "The Belvey Straight Creek Coal Company," it was generally known as "The Straight Creek Coal Company." There is no ground for the contention that appellant was misled. On the contrary, he admitted being in the particular mine on the occasion of the larceny, and attempted to justify on the sole ground that he was there entirely for an innocent purpose. Not only so, but, as the evidence showed that the owner, though technically called the Belvey Straight Creek Coal Company, was generally known as the Straight Creek Coal Company in which the owner-ship was laid in the indictment, the case is one where appellant cannot be convicted a second time for the same offense. In the circumstances the variance cannot be regarded as material.

Complaint is made of the admission of certain evidence, but, there being no objection thereto, the error, if any, is not available on appeal. Waters v. Commonwealth, 221 Ky. 433, 298, S. W. 1078.

Judgment affirmed.