Bernes B. STONE, Petitioner-Appellant,

v.

John W. WINGO, Warden, et al.,
Respondents-Appellees.

No. 18882.

United States Court of Appeals
Sixth Circuit.

Oct. 3, 1969.

William E. Rummage, Owensboro, Ky., for appellant; John W. Beard, Beard, Rummage & Kamuf, Owensboro, Ky., on brief.

George F. Rabe, Asst. Atty. Gen., Commonwealth of Kentucky, Frankfort, Ky., for appellees; John B. Breckinridge, Atty Gen., Frankfort, Ky., on brief.

Before WEICK, Chief Judge, PHILLIPS, Circuit Judge, and McALLISTER, Senior Circuit Judge.

McALLISTER, Senior Circuit Judge.

This is an appeal from the denial of a motion for an evidentiary hearing on a petition for a writ of habeas corpus, and from an order denying the petition for a writ of habeas corpus.

The background of the case is as follows: Appellant operated a retail jewelry business in rented premises on the first floor of a two-story building in Owensboro, Kentucky. He was in debt. His business was not thriving. On January 18, 1964, appellant left his store about 5:00 P.M. A half hour later the premises were discovered to be on fire and part of the building was burned down. Two months before the fire, appellant had obtained a large fire insurance policy providing for $100,000 coverage on his merchandise, and $25,000 for interruption of his business resulting from fire.

After the fire, the insurance company sent one of its investigators, John A. Kennedy, to inspect the premises, to determine whether the fire was accidental or of an incendiary origin, and "to place the responsibility" for the fire.

Subsequent to the investigation by Mr. Kennedy and after an investigation by state officials, appellant was charged with arson. On a trial, he was convicted of arson in the Daviess Circuit Court, Commonwealth of Kentucky, Owensboro, on September 11, 1964, and sentenced to a term of four years imprisonment in the state penitentiary. Appellant sought review of his conviction by appeal to the Kentucky Court of Appeals, which, on February 17, 1967, affirmed the judgment of the trial court. Stone v. Commonwealth, 418 S.W.2d 646. Thereafter, appellant filed a petition for a writ of certiorari to the Supreme Court of the United States, which denied the petition on April 8, 1968. Stone v. Kentucky, 390 U.S. 1010, 88 S.Ct. 1259, 20 L.Ed.2d 161. On April 12, 1968, the Kentucky Court of Appeals directed the Clerk of the Daviess Circuit Court to execute and enforce the mandate of the court. On April 15, 1968, appellant filed a motion in the United States District Court for the Western District of Kentucky, for stay of state court proceedings, which was overruled by Judge James F. Gordon.

We now come to the issues in this case on appeal from the District Court.

On April 15, 1968, appellant filed a petition in the United States District Court for a writ of habeas corpus, and on April 30, 1968, appellant moved the court for an evidentiary hearing on his petition for such writ. On May 28, 1968, an opinion and order were signed and entered overruling the motion for an evidentiary hearing and denying the petition for a writ of habeas corpus. From this opinion and order overruling the motion for an evidentiary hearing and deny-

ing the petition for a writ of habeas corpus, appellant here seeks review.

In his application for a writ of habeas corpus, appellant alleged that he had exhausted his state court remedies by appealing his conviction to the Kentucky Court of Appeals, by filing a petition for rehearing before that court, and by filing a petition for a writ of certiorari before the Supreme Court of the United States. However, appellee, Commonwealth of Kentucky, contends that five of the six issues raised by appellant in the District Court were not specifically before the Court of Appeals of Kentucky and that, therefore, appellant has failed, as to those issues, to exhaust his state court remedies.

Appellant asserts that he was denied effective assistance of counsel in the trial court, in that the indictment returned by the grand jury was amended after the impaneling of the jurors.

The District Court held that, in Kentucky, an indictment may be amended at any time prior to the verdict, providing the substantial rights of the defendant are not prejudiced.

However, appellant had argued before the Court of Appeals of Kentucky that the substantial right affected by the amendment of the indictment was that he did not have an opportunity to again question the jury in regard to the amended indictment and had no chance at that stage to prepare his defense to the new charge of aiding, counselling or procuring the burning of a storehouse.

In view of appellant's argument before the Court of Appeals of Kentucky, the District Court held that appellant had raised a federal constitutional issue before the state court and, therefore, as to this issue, he had exhausted his state remedy.

However, the District Court declared that after the indictment was amended, as it may be in Kentucky, in order to conform more closely with the wording of the statute claimed to have been violated, counsel for the petitioner did not make any motion to reopen the voir dire examination of those members of the jury already impaneled, nor did counsel make a motion requesting a continuance of the action in order that he might prepare the defense to meet the amended indictment. Moreover, both counsel and appellant knew well in advance of the amendment of the indictment, exactly which statutory section was involved in the original indictment, and such section was not altered by the change of the amended indictment. The District Court, in its opinion, observed that the question involved in this aspect of the case turned " 'upon whether the petitioner under the circumstances here disclosed was given reasonable notice and information of the specific charge against him * * *,' Paterno v. Lyons, 334 U.S. 314, 320, [68 S.Ct. 1044, 1047, 92 L.Ed. 1409] and further, whether once armed with that information, the petitioner and his counsel had adequate opportunity to prepare a defense. To this Court the substantive charge in the original indictment and the substantive charge in the amended indictment alleged that the petitioner committed the crime of arson, and he came to trial prepared, as best he could, to meet that charge."

The District Court completely disagreed with appellant's contention that he was denied due process arising out of the amendment of the indictment.

Appellant further contended in his petition for a writ of habeas corpus that evidence introduced at the trial, *"which were products of a private investigator's illegal searches,* which were made in concert * * * with officials of the State of Kentucky," was unlawfully seized in violation of his rights under the fourth amendment. The state trial court had allowed the Commonwealth to introduce certain evidence secured by a private insurance investigator; and it is appellant's contention that the insurance investigator secured the evidence without appellant's consent through the cooperation of certain officials of the State of Kentucky.

The District Court found there was no merit in this claim, holding that the evidence secured by a private person, not acting with the officials of the State of Kentucky, and which was produced at the trial, was evidence secured by a private individual who was not acting in concert with state officials.

Much of the argument as to whether the search made by the private investigator was made in concert with the Kentucky State Fire Marshal and, therefore, in violation of appellant's constitutional rights—must be considered in the light of the particular facts of this case.

On January 24, 1964, appellant, accompanied by his attorney and in the presence of his attorney, gave a statement before the Kentucky State Arson Investigator, Gerald Stewart, and the private investigator for the insurance company, John A. Kennedy. Mr. Stewart, in the presence of appellant's attorney, stated:

"I am going to make a little statement so that you will understand my position and a little later on, as we understand yours. I am Gerald Stewart, the State Arson Investigator of the Department of Public Safety, Division of Arson Bureau, State of Kentucky. Recently, my department received a request for an investigation for a fire that destroyed your place of business on January 18, 1964."

Mr. Kennedy, the private investigator for the insurance company, then stated to appellant, in the presence of appellant's attorney and Mr. Stewart, the following:

"We, generally, when we conduct an investigation as to determine what happened in an unknown fire, we go right to the assurer, which is you, and put all our cards on the table and you prefer it that way and we do, too. Nothing in this, as the Deputy Fire Marshal said, is in any way infers that you were at fault, or there was anything wrong or laid on the line, however, we will conduct an attempt to determine what happened, if it were, in this instance, to find there was

a fire of sundry origin, we would attempt to determine who might have done it. We always look to the building owner and occupant immediately and make investigations, which are normal * * * For instance, a lot of people are in financial difficulty and if they had a fire, it may have nothing whatsoever to do with it, but I would like to ask you, we are going to attempt to get a financial profile on you and background and if you will assist us in compiling it. We wanted to show that you did or did not have, what your financial condition was, whether it possibly might relate to your condition."

Mr. Stewart and Mr. Kennedy then questioned appellant in the presence of his attorney, and Mr. Kennedy afterward conducted a search of the premises. This search and inspection was conducted by Mr. Kennedy without any participation by state officials.

The evidence secured as a result of the inspection was retained by Mr. Kennedy for the insurance company, and was not connected with the state until it was used in evidence on the trial.

Appellant claims that Mr. Kennedy was acting in concert with the state officials, and was not acting solely on his own initiative as a private investigator for the insurance company.

" 'Concerted' means: 'Mutually contrived or planned; agreed on; (Webster's ·International Dictionary, 2nd Ed.)' ". United States v. Insurance Board of Cleveland, D.C., 188 F.Supp. 949, 956. In 15A C.J.S. 325, "Concerted action" is defined as: "Action which has been planned, arranged, adjusted, agreed upon, and settled between parties acting together, in pursuance of some design or in accordance with some scheme," and quoted in Rock Creek Oil Corporation v. Moore, Tex.Civ.App., 41 S.W.2d 501, 504, from 12 C.J. 385.

There is no evidence of such concerted action between Mr. Kennedy, the investigator for the insurance company, and the officials of the State of Kentucky. Mr.

Kennedy was investigating, for an insurance company, a fire which had destroyed property for which appellant had secured insurance in the amount of $125,000. The claim that the "statement-taking" from appellant in the presence of his attorney "concerned itself solely with a criminal investigation" by the state official and Mr. Kennedy, with a view to the criminal prosecution of appellant, is unfounded. Mr. Kennedy's sole purpose, from all the evidence, appears to have been the investigation of the fire for the insurance company. The proof clearly discloses that the evidence secured by Mr. Kennedy was not secured in concert with the state officials. Although, in appellant's brief in this court, counsel claims that Mr. Kennedy was acting as a Deputy State Fire Marshal in concert with the Kentucky State Fire Marshal, nevertheless, during the trial, in a welter of conflicting evidence and statements, counsel for appellant declared before the jury: "I think you know that he [Mr. Kennedy] is not a deputy state fire marshal, he's never has been a deputy state fire marshal; he's an arson investigator in from Chicago for the Allstate Insurance Company, that's the truth. * * * the truth is that John A. Kennedy came here for the Allstate Insurance Company * * * that is the real purpose, you know that's true and must know it's true, we all know it's true, and we further know that he's not a deputy state fire marshal * * *." Counsel obviously was right at the time of the trial.

Moreover, the insurance policy provided that in the event of a fire, the insured, "as often as may be reasonably required, shall exhibit to any person designated by this Company all that remains of any property herein described." The District Court held that thereby appellant gave his contractual consent to allow the insurance company to inspect his property in the event of fire; "that the investigation was a lawful investigation, and the fruits of that investigation would be properly admissible in a criminal action" within the purview of the rule set forth in Burdeau v. McDowell, 256 U.S. 465, 41 S.Ct. 574, 65 L.Ed. 1048.

Mr. Kennedy, the private investigator, testified he was given a diagram that was made by appellant, or his attorney, for the purpose of aiding Mr. Kennedy in going upon the burned premises, and sifting and searching the debris. When Mr. Kennedy first saw appellant, he told him: "I'll lay it on—right on the line and I'm not going to kid you, I'm here to determine the cause and origin of this fire. I'm going to find out if it was accidental or if it was natural. If it was set, I'll try to determine who set it." This was all stated by Mr. Kennedy to appellant "in the presence of his attorney. * * * Mr. Stone [appellant] consented several times to my being there. He stated that he would cooperate in every way possible. Both he and his attorney when I—and I asked for several things in addition to permission to go on the premises. I asked for permission to go in his home and his garage and to take photographs and to search, and he stated that he—they would be glad to cooperate in every way possible. And I thanked him, I said: 'You have cooperated over a hundred per cent.' * * * He said, 'We've tried to do everything we could.' I said, 'Thank you, I think you've done more than I've asked for * * *.' Mr. Stone cooperated in everything I asked."

The evidence thus discloses that appellant gave not only his contractual consent to the search of the premises in the policy of insurance, but also gave, according to Mr. Kennedy's testimony, his oral consent, and cooperated in every way with Mr. Kennedy's investigations, search, sifting of the debris, and—photographing in appellant's home and garage and, as above mentioned, there was substantial proof that the evidence in question was not secured by Mr. Kennedy acting in concert with state officials.

In Burdeau v. McDowell, *supra,* the court held that even where property had been wrongfully seized in an illegal search by a private individual, the Gov-

ernment might use such evidence, if it had no part in wrongfully obtaining it. The court said:

"We know of no constitutional principle which requires the Government to surrender the papers under such circumstances. Had it learned that such incriminatory papers, tending to show a violation of federal law, were in the hands of a person other than the accused, it having had no part in wrongfully obtaining them, we know of no reason why a subpoena might not issue for the production of the papers as evidence. Such production would require no unreasonable search or seizure, * * *."

In United States v. Goldberg, 330 F. 2d 30, 35 (C.A.3), the court said:

"We think the documents and records were clearly admissible under Burdeau v. McDowell, 256 U.S. 465, 41 S.Ct. 574, 65 L.Ed. 1048. Here, certain of McDowell's business associates had taken from his safe, without his knowledge, certain documents and had turned them over to Government officials. McDowell then filed a petition seeking their return, as they were about to be presented to a Grand Jury. Here, the evidence established that no Government official had participated in or had been connected with the taking and that since the documents came into their possession without a violation of McDowell's rights by any Government authority, the Government could retain them and use them as evidence."

Here, the property was taken in a lawful search by Mr. Kennedy; and the Government, not even having had a part in securing the evidence in the lawful search, is, without question, entitled to use the evidence in the criminal proceeding.

One more observation on this aspect of the case: The question before the court on the petition for a writ of habeas corpus was whether a private investigator's search was a private search, or a search in concert with state officials; and the court found that it was not a search made in concert with state officials.

■ However, in appellant's brief, it is now contended that the private investigator was an official of the state, who, instead of conducting a private search, was conducting a "State search." In the opinion of the Kentucky Court of Appeals (Stone v. Commonwealth, 418 S.W. 2d 646, Kentucky) there was no mention of any search, except a private search by a private individual, or a private person. There was no mention of a "state search," by a state official; and as we have observed in the appellant's petition for a writ of habeas corpus, he only alleged, in this regard, an illegal search *made by a private investigator,* which was made in concert with state officials. We will limit ourselves, accordingly, to the allegations of the appellant for a writ of habeas corpus, confining our determination to a search made, and evidence secured, by a private investigator, and resolving the issue whether it was, or was not, made in concert with state officials, rather than whether it was a state search made by Mr. Kennedy, occupying the position of an official of the state. Any other procedure would result in our trying issues that had never been presented to the trial court, the Kentucky Court of Appeals, or to the District Court on the hearing of this habeas corpus petition.

It is contended by appellant, in his brief on appeal, that, on the trial, he offered the testimony of Robert Short, his counsel and an Owensboro attorney, "for the purpose of rebutting the evidence of the Commonwealth witness, Kennedy, as to the alleged consent given by the Appellant to search. The trial court refused to permit the Appellant to place Mr. Short on the stand in chambers. It was the contention of the Appellant at this point that the question of consent and waiver under the Fourth Amendment to the United States Constitution and Section 10 of the Kentucky Constitution was a question of law. *The Court ruled it was a question of fact for the jury to determine.*" (Emphasis supplied.)

Subsequently, in his brief on appeal, appellant states that the trial court "ruled *as a matter of law* that the Petitioner had waived his rights under the Fourth Amendment to the United States Constitution and consented to the search." A few lines later in his brief on this appeal, appellant says "the State factual determination by the Trial Judge is not fairly supported by the record as a whole."

The contention as to the trial court's rejection of the offer of Mr. Short to testify in rebuttal of the consent given to search, is irrelevant, since the District Court found that the written contractual consent in the policy of insurance was sufficient to authorize the search; and this finding makes unnecessary any disquisition with regard to the offer of the testimony of Mr. Short.

However, the principal reason for not considering any claim of appellant, with respect to error or irregularity on the part of the District Court in ignoring the appellant's offer of the testimony of Mr. Short, is that no mention of Mr. Short, or of the offer of his testimony, was made in the allegations of appellant's writ of habeas corpus; and that petition was the only matter upon which the court was adjudicating.

■ Appellant further contends that the trial judge failed to make an independent determination of the admissibility of the evidence which appellant contended was unlawfully seized, and that it failed properly to instruct the jury on this issue, all in violation of appellant's rights under the fourth and fourteenth amendments to the Constitution. The District Judge found that appellant had failed to exhaust his state remedies as to this issue. Regardless of that fact, we are of the view that the contention is without merit, since it is clear that, as has been demonstrated, the evidence in question was not unlawfully seized; that, for the trial court to make an independent determination of the admissibility of that evidence would have been sleeveless, and was unnecessary; and

that, accordingly, on this aspect of the case, it was unnecessary to instruct the jury on the issue as to whether the seizure of the evidence was in violation of appellant's constitutional rights, as we have already held that it did not violate such rights.

■ Appellant claims he was deprived of due process of law in that the jury determined the length of the sentence by a quotient verdict, in which each juror set down on a separate slip of paper the length of term of sentence, and the sum of all was divided by twelve. However, the submission of the slips, or balloting, did not take place until all twelve jurors had voted unanimously that appellant was guilty as charged. According to the law of Kentucky, this did not amount to a quotient verdict. In Graham v. Commonwealth, 310 Ky. 773, 776, 221 S.W.2d 677, 678, it was said:

"This method in arriving at verdicts has been repeatedly condemned by us. However, where it appears, as in the instant case, that the jury unanimously agreed upon the guilt of the accused and then arrived at a quotient verdict which was subsequently and independently adopted by all members of the jury, we have written that the verdict was not one by lot within the meaning of § 271(3) of the Criminal Code of Practice."

Appellant was not deprived of due process of law by the verdict of the jury in this case, and the judgment entered thereon.

Appellant also contends in his petition for a writ of habeas corpus that he was denied due process in that the court failed and refused to instruct the jury as to the elements of proof in order for them to find the petitioner guilty as an aider and abettor and/or accessory before the fact; and, in effect, permitted them to find the petitioner guilty as aider and abettor or accessory before the fact without any evidence at all in this regard.

Appellant was indicted for having "wilfully and maliciously set fire to,

burned or caused to be burned, or aided, counselled, or procured the burning of a storehouse * * *." 1

The trial court instructed that: "If the jury believes from the evidence in this case, beyond a reasonable doubt * * * on January 18, 1964, * * * the defendant * * * wilfully and maliciously set fire to, burned, or aided, counselled or procured the burning of a store building, * * * then you will find the Defendant guilty as charged in the indictment * * *.

"If the jury have a reasonable doubt of the Defendant * * * having been proved guilty, you will find him not guilty."

The foregoing instructions were prepared the night before the jury was charged, when the counsel for appellant, appellee, and the court stenographer met with the court to work on the instructions. After the instructions were formulated and before the court charged the jury, counsel for appellant stated:

> "Object to each and every instruction given by the Court, and move the Court to instruct on the whole law of the case.

> "Comes the defendant and moves the Court to instruct on the whole law of this case, including proper instruction to the jury as to whether or not the defendant, B. B. Stone, waived his rights under the Fourth Amendment to the United States Constitution and consented to the search of his premises by the witness, John A. Kennedy."

The foregoing appear to be the only objections or exceptions made to the instructions to the jury. There were no requests to charge made to the trial court by appellant's counsel, other than the

above-mentioned motion for "the Court to instruct on the whole law of the case."

In appellant's brief in this court, he quotes from his brief on appeal before the Court of Appeals of Kentucky, in which he declared "there is no evidence that the Appellant aided, counselled, or procured the burning of the store building and therefore the instructions were also clearly erroneous in this regard."

In answer to the foregoing contention of appellant, we refer to the rules of law relating to principals, aiders and abettors and those who procure the commission of a felony.

It is the law that all persons concerned in the commission of a crime are regarded as principals. Grapes v. Commonwealth, 202 Ky. 760, 261 S.W. 271.

Variance between an indictment charging that defendant caused interstate transportation of bonds, and proof that defendant transported the bonds himself, to which no claim of prejudice was made, was not fatal; and it would seem specious to argue that one who brings about a result directly cannot be fairly said to have caused that result; there was no fatal variance. United States v. Scandifia, 390 F.2d 244, 250 (C.A. 2).

Under modern practice, a variance is not material unless it misleads the accused to his prejudice in making his defense, or may expose him to the danger of being again put in jeopardy for the same offense. Fugate v. Commonwealth, 177 Ky. 794, 198 S.W. 240, 242. Berger v. United States, 295 U.S. 78, 55 S.Ct. 629, 79 L.Ed. 1314; United States v. Mills, 366 F.2d 512 (C.A.6); Thomas v. Commonwealth, 259 Ky. 786, 83 S.W. 2d 460, Miller v. Commonwealth, 234 Ky. 224, 27 S.W.2d 957.

---

1. Appellant was indicted under Section 433.020 of the Kentucky Revised Statutes, which provides:

"Any person who wilfully and maliciously sets fire to, burns or causes to be burned, or who aids, counsels or procures the burning of any barn, stable, garage or other building, whether the property of himself or another, that is not a parcel of a dwelling house; or any shop, storehouse, warehouse, factory, mill or any other building, whether the property of himself or another; or any church, meeting house, courthouse, workhouse, school, jail or other public building, or any public bridge shall be confined in the penitentiary for not less than one nor more than ten years."

In Glass v. United States, 7 Cir., 328 F.2d 754, error was claimed on the ground that appellant had objected to an instruction to the jury on aiding and abetting, and that appellant had not been charged with aiding and abetting. The court, however, observed that aiders and abettors are chargeable directly as principals, and that giving the instruction on aiding and abetting, although the appellant was not so charged, was not error.

In United States v. Carengella, 7 Cir., 198 F.2d 3, 6, 7, the court said:

"It is apparent there is no evidence on which to base a conviction of Di Vito and Blandi, unless they can be said to be aiders and abettors in connection with the receipt and possession of the whiskey by Carengella. Title 18 U.S.C.A. § 2 provides that whoever aids or abets another in the commission of an offense against the United States is guilty as a principal. Di Vito and Blandi were not charged in the indictment as aiders and abettors, but this is not necessary since aiders and abettors may be charged directly as principals."

A variance will not be treated as material where the allegations and the proof substantially correspond. Fugate v. Commonwealth, *supra*. In the instant case, the allegations in the single count of the indictment, and the evidence, including the inferences reasonably to be drawn therefrom, substantially correspond.

The general rule as stated in 42 C.J.S. Indictments and Informations § 260, is that where no distinction in punishment is made, a person indicted as a principal may be convicted on proof that he was only present aiding and abetting, or, in other words, on proof that he was guilty as principal in the second degree. Conversely, a person indicted as an aider or abettor may be convicted as the perpetrator of a crime. Combs v. Commonwealth, 112 S.W. 658, 33 Ky.Law Rep. 1058.

Where a statute penalizes certain acts in the disjunctive, proof of any one of such acts under an indictment charging all of the acts conjunctively is sufficient. Pines v. United States, 123 F.2d 825 (C.A.8). Troutman v. United States, 100 F.2d 628 (C.A.10). It is proper to charge the accused with both having done, and caused or procured to be done, the act as to which the offense is predicated; where the doing or causing or procuring it to be done is, by the statute defining the crime, made an offense of equal degree. Crain v. United States, 162 U.S. 625, 16 S.Ct. 952, 40 L.Ed. 1097. United States v. Cafarelli, 183 F.Supp. 734 (D.C.Utah). See also United States v. Janes, D.C., 74 F. 545.

In his brief on appeal to the Court of Appeals of Kentucky in the instant case, appellant said that the evidence, taken in the best light for the Commonwealth, establishes the following:

"(1) That there was a fire at about 5:30 on January 18, 1964, which subsequently consumed the building and contents of Stone Jewelry Store.

(2) That the Appellant had the opportunity to set the fire.

(3) That he could have been there when the fire started.

(4) That there was an accelerant used on the fire.

(5) That the Appellant was on a cash basis with suppliers.

(6) That he had recently taken out a substantial insurance policy with Allstate Insurance Company covering the contents and improvements.

(7) That the Appellant owed a substantial sum of money, although he had a good many assets, and had been sued on a number of accounts.

(8) That if the Appellant did not set the fire, he could have known who did set it."

In considering the appeal, the Court of Appeals of Kentucky, after quoting the above from appellant's brief, stated:

"To this list we may add that the evidence for the Commonwealth described the difference between the burning process on wood where an accelerant was present and that resulting from natural burning and the difference in the coloration of charred wood by burning due to accelerant and that resulting from burning without it. A witness with vast experience, covering a period of more than twenty years, from the holocaust at Hiroshima to the present time, gave convincing evidence that the building was set afire at three separate places. He explained that some of the fire 'burned down,' indicating that the flames followed a liquid accelerant as it ran through the floor cracks and down the walls, and that natural fire always burns upward from the starting point.

"It is concluded the trial court properly submitted the issue to the jury. Hines v. Commonwealth, Ky., 390 S.W. 2d 152 (1965). Baker v. Commonwealth, Ky., 307 S.W.2d 773 (1957)."

The decision of the Kentucky Court of Appeals in the instant case, Stone v. Comonwealth, Ky., 418 S.W.2d 646, is authority for the view that a person indicted as a perpetrator of an offense or as an aider and abettor, or as one who procures someone to commit the offense, can be convicted either as the perpetrator or as an aider and abettor, or such procurer, although no one else was mentioned in the indictment, since, under the circumstantial evidence submitted, the jury could have inferred that appellant aided or procured another to set the fire, or that he set it himself.

■ The proposition then before us may be stated as follows: Can an accused in an arson case in a single count charged with setting a fire, *or* causing to be burned *or* aiding *or* procuring the burning of premises, be convicted, where the court instructed that if the jury finds beyond a reasonable doubt that the defendant wilfully and maliciously set fire to, burned *or* caused to be burned, *or* aided, counselled *or* procured the burning of the premises, then the jury must find the defendant guilty as charged in the indictment? Under such a count, and such an instruction, can the jury find *beyond a reasonable doubt that defendant aided or procured another to set the fire,* or did it himself? Where there is evidence from which the jury can infer that defendant aided or procured another to set the fire, and also evidence from which they can infer that the defendant set the fire himself, does the jury have to choose between finding that defendant got someone else to set the fire, or a finding that he set it himself?

There is no evidence that anyone saw appellant or anyone else setting the fire. The fire was not discovered until half an hour after appellant left the premises. The jury could find that appellant did not set the fire; but that it was set by someone else, whom he had procured to set it, after appellant had left the premises; or that appellant had himself set the fire which was not discovered until a half hour after he had left the premises. All of the foregoing could be found by the jury as a result of inferences reasonably to be drawn from the evidence. As to guilt, all is based on inferences.

The jury could properly find that defendant had, beyond a reasonable doubt, procured another to set the fire. The jury could find, beyond a reasonable doubt, that defendant had set the fire himself. Since there is evidence to support a conviction on both findings, the jury can find, beyond a reasonable doubt, that appellant procured another to set the fire, and could find, beyond a reasonable doubt that, if appellant did not procure another to set the fire, he did it himself. This, on first glance, seems not the path of logic; yet, by analogy to the law of agency, it is the same offense charged in both allegations: one allegation being that the principal committed the act himself, the other being that the principal committed the act himself but through an

agent. He who acts through another, acts himself: Qui facit per alium facit per se.

It was sufficient for the trial court to instruct the jury that it could find appellant guilty of setting the fire himself, or aiding, abetting or procuring another to set the fire.

█ One may commit a crime by an agent, as well as by himself, if he directs the violation of the law. Fields v. Commonwealth, 202 Ky. 523, 260 S.W. 343, and a principal is liable for violation of the criminal law by an agent, if the agent acts under his commands. Wood, Jr. v. Commonwealth, 229 Ky. 459, 17 S.W.2d 443. "If one with criminal intent designs the commission of a criminal act and directs or employs another to carry it out, the act of the agent becomes the act of the principal, and the principal is criminally responsible therefor." Miller v. Commonwealth, 240 Ky. 346, 351, 42 S.W.2d 518.

We find no denial of due process resulting from the trial court's instructions, or from its failure to instruct.

█ Finally, appellant contends he was denied due process of law because the trial court permitted the introduction in evidence of the testimony of the Commonwealth's witness, Mr. Kennedy, but did not permit Mr. Aull, a member of the Fire Department, acting in this capacity at the time of the fire, to testify that he did not smell or detect accelerant fumes on the second floor of the burned building at the time the Fire Chief suddenly ordered all firemen out of the flaming building as a safety measure.. Mr. Aull was in the courtroom during the testimony of two other firemen; and his presence was improper and in violation of the rule excluding witnesses, which was requested—both by the prosecution and by appellant. It was, as the District Court found, within the reasonable discretion of the trial judge to exclude the testimony of Mr. Aull. On the other hand, Mr. Kennedy was not excluded under the rule, because he was present in the courtroom during the time in ques-

tion by stipulation of the appellant. The exclusion of the testimony above mentioned did not result in a deprivation of due process.

Other matters presented on this appeal are not deemed meritorious, and their discussion is unnecessary to determination.

In accordance with the foregoing, the order of the District Court denying the petition for a writ of habeas corpus is affirmed.