**UNITED STATES of America,
Plaintiff-Appellee,**

v.

**William E. LAITE, Jr., Defendant-Appellant.**

**No. 26342.**

United States Court of Appeals
Fifth Circuit.

Oct. 13, 1969.

William P. Fonville, Dallas, Tex., for defendant-appellant.

Eldon B. Mahon, U. S. Atty., Conard L. Florence, Alex H. McGlinchey, Asst. U. S. Attys., Fort Worth, Tex., for plaintiff-appellee.

Before AINSWORTH and SIMPSON, Circuit Judges, and MITCHELL, District Judge.

SIMPSON, Circuit Judge:

We review on appeal a conviction below before a jury and concurrent year and a day sentences upon two counts, Counts 3 and 5, of a five-count indictment charging that appellant committed perjury in testimony before a federal grand jury at Lubbock, Texas on March 8, 1967. We find that reversible error is not demonstrated with respect to the proceedings below under Count 3 and affirm the conviction without finding it necessary to consider the contentions presented as to Count 5.

Laite, a contractor on government jobs for eight or nine years, had been the successful bidder on a contract for repair of 60 houses in Federal Housing Administration Project Number 133–71 at Big Spring, Texas.

The Lubbock grand jury was investigating possible violations of Title 18, U.S.C., Section 287 (false claims), Title 18, U.S.C., Section 1001 (false statements), Title 18, U.S.C., Section 641 (theft of government property) and other federal criminal statutes by Laite and others. Laite was called as a witness and testified.

He was named in a proposed 23-count indictment considered but not finally acted upon by this grand jury. The perjury indictment upon which he was tried was returned July 19, 1967 by a second Northern District of Texas grand jury in session at Dallas, Texas. Appellant went to trial May 13, 1968 upon his not guilty plea. His motion for judgment of acquittal was granted as to Count 4 and Counts 1, 2, 3 and 5 went to the jury, which found him guilty as to Counts 3 and 5, not guilty as to Count

2 and reported disagreement as to Count 1. At sentence, June 21, 1968, judgment of acquittal was entered as to Count 1. As indicated, the sentences under Counts 3 and 5 were concurrent year and a day confinement sentences. This timely appeal followed.

Laite had entered into a contract with the Federal Housing Administration to repair and rehabilitate 60 houses in a Big Spring, Texas Project. The project had been badly mishandled and a number of the houses were in near ruinous condition from vandalism and neglect. Laite operated through two concerns, Town and Country Pest Control, Inc. and Laite Contracting Company. The pest control concern was his principal business and he did not have available the organization or manpower needed for the Big Spring Project 133.71 job. He hired an individual, William R. Sargent, Jr., a sheet metal worker to take charge as Superintendent of the job, and the property at Big Spring when the contract was awarded to Town and Country Pest Control in April, 1965.

From June 1963 to that date Laite had been awarded ten contracts by various governmental agencies, all of them containing standard Bacon-Davis Act [1] labor clauses.

Count 3 of the indictment is set forth in the margin.[2]

---

1. The Bacon-Davis Act, 40 U.S.C., Section 328(a) provides:

"Notwithstanding any other provision of law, the wages of every laborer and mechanic employed by any contractor or sub-contractor in his performance of work on any contract of the character specified in section 329 of this title shall be computed on the basis of a standard workday of eight hours and a standard workweek of forty hours, and work in excess of such standard workday or workweek shall be permitted subject to the provisions of this section. For each workweek in which any such laborer or mechanic is so employed, *such wages shall include compensation, at a rate not less than one and one-half times the basic rate of pay, for all hours worked in excess of eight hours in any calendar day or in excess of forty hours in the workweek, as the case may be.*" (Emphasis added)

2. "1. On or about the 8th day of March, 1967, in the Lubbock Division of the Northern District of the Northern District of Texas, a competent tribunal, that is, a Grand Jury of the United States of America duly impaneled and sworn in the United States District Court for the Northern District of Texas, was conducting an inquiry to determine, among other things, whether William F. Laite, Jr., or others had committed in the Northern District of Texas violations of 18 U.S.C. § 287 (False Claims), 18 U.S.C. § 1001 (False Statements), and 18 U.S.C. § 641 (Theft of Government Property), and other federal criminal statutes, said inquiry being a case in which a law of the United States authorized an oath to be administered.

"2. It was material to the Grand Jury inquiry to ascertain, among other things, the correctness and completeness of the payrolls submitted to the Federal Housing Administration concerning work performed by laborers and mechanics on Federal Housing Administration Project Number 133–71 at Big Spring, Texas for certain periods.

"3. At the time and place alleged in paragraph 1 herein, William E. Laite, Jr., having duly taken an oath before the said Grand Jury that, as a witness before said Grand Jury, he would testify truly, did, then and there, wilfully and contrary to such oath testify falsely before the Grand Jury with respect to the aforesaid material matter as follows:

'Q Did you ever tell anybody that you would pay them—let them work more than eight hours and just pay them straight time?

A No, sir.

Q That you could not pay them time and a half?

A No, sir.

Q Did you ever tell any of the men that you sent down that you couldn't pay them time and a half, but if they would go down there and work for you, since they were away from home and you knew it would cost them additional money to live down there, that they could work as many hours per day as they wanted to?

A No, sir.'

"4. The aforesaid testimony of William E. Laite, Jr., as he then and there well knew and believed was not true in that certain laborers or mechanics were told that they could work in excess of 40 hours in certain weeks and be paid straight wages rather than at an over-

Appellant was from the vicinity of Macon, Georgia. He had in fact been a member of the Legislature of that state. He recruited several laborers for the Big Spring job in the Macon area. Their testimony indicated that Laite told them they could work all the hours they wanted (normally in excess both of eight hours per day and of forty hours per week) but that their pay would be for straight time, without overtime.[3]

The working of these men overtime without overtime wages was a violation of the Bacon-Davis Act (Title 18, U.S.C. Sec. 328(a), footnote 1, supra) and of the terms of Laite's FHA contract No. 133–71. For convenience in comparison we here quote the grand jury testimony of Laite as alleged in Count 3 and as shown by the proof:

"Q. Did you ever tell anybody that you would pay them—let them work more than *eight hours* and just pay them straight time?

time rate as required in said Federal Housing Administration Project Number 133–71.
"A violation of Title 18, U.S.C., Section 1621."

3. We quote the testimony of one of these witnesses, Jimmy Lee Jackson:
"Did he talk to you about your rate of pay, particularly on the overtime hours and any subsequent—at any later time?
"A. Yes, sir.
Q. Do you recall when that occasion was?
A. That was when I went home for some more supplies for him and we was unloading the truck at his place in Macon, and John Glover came by and he asked John did he want to work for him, and he said yes. John asked him about this rate, how we were going to be paid, and he told him that he could work *all the hours* that he wanted to and he couldn't afford to pay him overtime and a half-time for overtime.
    *    *    *    *    *
Q. All right, sir, how many hours a day did you normally work?
A. *Ten or twelve hours.*
Q. All right, sir, now who normally worked these ten or twelve hours a day?
A John Glover, Walter Jackson and myself.
Q. All right, how many days a week did you work?

A. No, sir.
Q. That you could not pay them time and a half?
A. No, sir.
Q. Did you ever tell any of the men that you sent down that you couldn't pay them time and a half, but if they would go down there and work for you, since they were away from home and you knew it would cost them additional money to live down there, that they could work as many hours *per day* as they wanted to?
A. No, sir." (Emphasis added).

██ The first major contention of appellant is that since the indictment alleged perjury in *ipsissimis verbis* (the identical words), it was incumbent upon the prosecution to prove that he used the same words that appear in the indictment, i. e., "eight hour day" and "per day" in discussing wages and hours with the employees. This contention is with-

A. Seven.
Q. Worked on Saturday and Sunday?
A. That's right.
Q. And was this—did you do this every Saturday and Sunday?
A. Mostly. Most every Satuday and Sunday. A few Sundays we went to church." (Emphasis added)

John Glover, another of the laborer witnesses, testified:

"A. And I also asked him, you know, about overtime and he said we could work all the hours we wanted to, but he didn't have enough money in the job to pay time and a half for overtime.

Q. All right, now, you say that he told you you could work all the time that you wanted to?
A. That's right.
Q. Now about how many hours a day would you work?
A. Well, normally we would work about twelve hours a day.
Q. You were not supposed to receive time and a half?

A. No, he said he didn't (sic) enough money in the job to pay time and a half time, and so I agreed, because Jimmy had worked for him on Warner-Robbins job, and they were receiving time and a half time, and I went along with that, that he didn't have enough money in the job to pay the half time."

out merit. The thrust of the indictment charges of perjury is that the three quoted answers, "No, sir", were false as to a material matter. The inquisitor did not put his questions in quotation marks, or refer to exact language allegedly used by Laite on the prior occasion he was being questioned about.

The questions adequately told appellant that "overtime" (either over forty hours per week or over eight hours per day worked) was the subject under examination. The use by the witnesses of the term "overtime" instead of the language "more than eight hours" used in questioning Laite was not a material or substantial variance.

"In a prosecution for perjury or false swearing, the matter sworn to must be proved substantially as alleged, and a material variance in this respect is fatal. However, it is not necessary to prove the *exact* words of the accused in giving the false testimony, it being sufficient to prove substantially what he said; and it is not necessary that the proof as to the alleged false testimony shall correspond literally with the allegations of the indictment, and a variance between the averment and proof in respect to immaterial matters is not fatal." 70 C.J.S. Perjury § 50g, p. 522; cf. 41 Am.Jur. Perjury § 48, p. 27. The exact words charged in the indictment need not be proved; if the charge is substantially proved, any variance is immaterial. Fugate v. Commonwealth, 177 Ky. 794, 198 S.W. 240 (1917).

The appellant's next contention is as technical as the first one advanced. It is that he did not perjure himself when he answered "No, Sir" to the *exact* words of the grand jury inquisitor, because he never told anyone that they could work more than *eight hours* or as many hours *per day* as they wanted. He claims his "No, Sir" response was literally truthful in regard to the strict form of the question.

The sole question here is whether or not appellant's "No, Sir" response was intended to answer the exact *form* or the *substance* of the question. In a prosecution for perjury, the question of intent or willfulness is a question for the jury. Beckanstin v. United States, 5 Cir. 1956, 232 F.2d 1; Harrell v. United States, 5 Cir. 1955, 220 F.2d 516. See also United States v. Marchisio, 2 Cir. 1965, 344 F.2d 653; United States v. Diogo, 2 Cir. 1963, 320 F.2d 898.

We hold there was sufficient evidence for the jury to find that Laite intended to answer to the *substance* (overtime) of the question and not the exact form. Appellant's presence before the grand jury was to aid that body in determining if he had in fact paid straight time wages for overtime work in violation of the Bacon-Davis Act, 40 U.S.C., Sec. 328(a).[4]

It was an entirely reasonable inference for the trial jury to draw that grand jury questions as to "more than eight hours" and working "as many hours per day as they wanted" meant "overtime" both to the inquisitor and to Laite. A truthful response would have been an admission of Davis-Bacon violations. The trial jury was justified in inferring that Laite was responding to the substance and not to the exact form of the questions, and thereby knowingly perjuring himself.

█ The third contention urged by appellant as to his conviction under Count 3 relates to the sufficiency of the evidence under the "two witness rule". He asserts that the statements he is alleged to have made to his employees, Jackson and Glover, were not proved by the testimony of two witnesses or by the testimony of one witness strongly corroborated by independent evidence. The argument is lacking in substance.

Glover's testimony is quoted, supra (page 579). In addition to Jackson's

---

4. The grand jury was of course also concerned with possible violations of the False Claims Act, Title 18 U.S.C., Sec. 287, or the False Statements Act, Title 18, U.S.C., Sec. 1001, occurring in the collection process from the United States.

testimony, supra (page 579) he further testified as follows:

"Q. All right, sir, now you say you were to get two checks, one for your regular 40 hours. How was this figured? At your regular hourly basis?

A. Yes.

Q. I believe you testified you were to get a separate check for overtime hours. At what rate was this? Regular?

A. Same as the regular, two-fifty-seven and a half.

Q. You say before coming out here, Mr. Laite advised you of this. Did he talk to you about your rate of pay, particularly on the overtime hours and any subsequent—at any later time?

A. Yes, sir.

Q. Do you recall when that occasion was?

A. That was when I went home for some more supplies for him and we was unloading the truck at his place in Macon, and John Glover came by and he asked John did he want to work for him, and he said yes. John asked him about this rate, how we were going to be paid, and he told him that he could work all the hours that he wanted to and couldn't afford to pay him overtime and a half-time for overtime."

Both witnesses were positive that they heard Laite say they could work all the hours they wanted to, but that he did not have enough money in the job to pay overtime.

The two workers' testimony was independently corroborated by Mrs. Bailey, Laite's bookkeeper, who testified that she received regular payroll sheets from Mr. Sargent showing only straight time hours of forty per week and eight per day on the Big Spring job, but also received second sheets showing additional overtime hours for the same employees, from which she made out additional payrolls. Time cards were introduced showing daily overtime hours worked in addition to straight time. As to these, Sargent, the job superintendent, testified:

"Q. All right, now, the four hours on that first exhibit (time card), what does that represent?

A. That represents overtime they put in that day.

Q. All right, on each of the exhibits here where you have three and a half, and different hours, all, does that represent straight time or overtime?

A. Overtime.

Q. On all of these exhibits that you have identified, do these hours represent straight time or overtime put in by the employees, Mr. Sargent?

A. Overtime."

\* \* \* \* \* \*

"Q. Do you know whether or not John Glover, Jimmy Jackson or Walter Jackson ever received any time and a half?

A. They received a check for straight time on the overtime pay but they did not receive any overtime for the overtime".

The rule requiring proof of perjury by two witnesses or by one witness plus strongly corroborative evidence was amply satisfied. Paternostro v. United States, 5 Cir. 1962, 311 F.2d 298, 306; cf. Weiler v. United States, 323 U.S. 606, 608, 65 S.Ct. 548, 550, 89 L.Ed. 495, 497–499, 156 A.L.R. 496, 497 (1945).

The conviction under Count 5 also comes under appellant's attack. We pretermit discussion of this count and the points urged by appellant for reversal of his conviction thereunder as unnecessary under the "concurrent sentence" doctrine, since the sentences imposed were concurrent sentences to confinement for one year and one day. Kiyoshi Hirabayashi v. United States, 320 U.S. 81, 63 S.Ct. 1375, 87 L.Ed. 1774 (1943); Mishan v. United States, 5 Cir. 1965, 345 F.2d 790, 791. We do not understand Benton v. Maryland, 395 U.S. 784, 787–791, 89 S.Ct. 2056, 2058–2061, 23 L.Ed.2d 707, 712–713 (1969), to pass upon the continuing validity of the "concurrent sentence" rule as a rule of judici-

582

al convenience, see 395 U.S. at 791, 89 S.Ct. 2056, but simply read that case as holding that the rule presents no jurisdictional proscription to appellate consideration of a concurrent sentence.

The evidence under Count 3 was ample to sustain conviction. It was submitted to the jury under appropriate instructions and the appellant has failed to demonstrate error in connection with his conviction under that count.

The judgment of conviction is

Affirmed.